## HAIGHT v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit. November 7, 1927.

No. 5235.

1. **Internal revenue ⚬⚬38(1)—Action to recover taxes paid by stockholders of personal service corporation finally determined not to be such a corporation held not maintainable, where corporation did not pay tax (Judicial Code, § 24, subd. 20 [28 USCA § 41]; Revenue Act 1918, § 218 (c), (e) [Comp. St. § 6336⅛i]; Revenue Act 1926, § 1210 [26 USCA § 1065a]).**

Under Judicial Code, § 24, subd. 20 (28 USCA § 41), Revenue Act 1918, § 218 (c), (e), being Comp. St. § 6336⅛i, and Revenue Act 1926, § 1210 (26 USCA § 1065a), no action was maintainable against government to recover income taxes paid by individual stockholders of alleged personal service corporation, later determined not to be such a corporation in fact, where tax was not paid by the corporation.

2. **Constitutional law ⚬⚬106—Taxpayer has no vested right in remedy given for error in taxation, and Congress may impose conditions defeating remedy.**

Taxpayer has no vested right in remedy given by Congress for correction of an error in taxation, and Congress may by statute impose conditions on right to recover, which in effect leave taxpayer remediless.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by James A. Haight, Jr., as trustee in bankruptcy of the estate of George B. Hall and the community composed of George B. Hall and his wife, against the United States. Judgment for the United States (20 F.[2d] 245), and plaintiff brings error. Affirmed.

Bronson, Jones & Bronson, of Seattle, Wash., for plaintiff in error.

Thos. P. Revelle, U. S. Atty., and Arthur E. Simon, Asst. U. S. Atty., both of Seattle, Wash., and A. W. Gregg, Gen. Counsel, and Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for the United States.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from a judgment denying the recovery by plaintiff of certain income taxes paid by George B. Hall and his wife for the years 1918 and 1919. The Halls are bankrupts, and plaintiff, having qualified as trustee of the estate on May 20, 1925, sues in that capacity. The amounts in controversy were paid by the Halls as a result of their having included in their returns of income their ratable shares of the undistributed profits of the G. Batcheller Hall Company, a corporation, of which they were stockholders. This was done upon the assumption that this company was what is recognized in section 218(e) of the Revenue Act of 1918, as a personal service corporation, which for taxation purposes is treated as a partnership. 40 Stat. 1070 (Comp. St. § 6336⅛i). This mode of treatment, it may be observed, ceased on December 31, 1921. Section 218d, 42 Stat. 245 (Comp. St. § 6336⅛i). The 1918 taxes were paid by the Halls on December 15, 1919, and payment for 1919 was made in four equal installments, namely, on the 15th day of March, June, and September, 1920, and February, 1921.

In the spring of 1924 the Commissioner of Internal Revenue held the Hall Company was not a personal service corporation, and accordingly assessed against it taxes for 1918 and 1919, pursuant to provisions of the law relating to ordinary corporations. These taxes the corporation has not paid, nor have the Halls ever received from it their distributive shares of its income for the years 1918 and 1919. Upon being notified of this ruling, the Halls, on March 7, 1924, filed their claims for a refund, which were, on December 7, 1924, approved by the Commissioner, and in the spring of 1925 checks therefor were sent to the collector at Tacoma, Wash., for delivery to the claimants. The collector, however, declined to deliver them, but ultimately returned them to the Commissioner, with the result that no refund has in fact been made, either to the Halls or to the trustee. We are not advised of the reasons for withholding the checks, otherwise than by appellant's brief, wherein it is stated it was because of the nonpayment of the corporation tax.

The controversy revolves around the

meaning and application of section 1210 of the Revenue Act of 1926, which became effective February 26, 1926, two days prior to the commencement of this suit. 44 Stat. pt. 2, p. 130. That section is as follows:

"Any individual who has paid a tax (in accordance with section 218 of the Revenue Act of 1918 or section 218 of the Revenue Act of 1921) as a stockholder of a personal service corporation shall be entitled to a credit or refund, in the manner provided in section 284, if (a) such corporation has been finally determined not to be a personal service corporation, and (b) such corporation has paid the tax imposed by title II of the Revenue Act of 1918 or title II of the Revenue Act of 1921, as the case may be, and (c) claim therefor is filed within one year after the enactment of this act, or before the expiration of the period of limitations upon the filing of such claim, whichever is the later." 26 USCA § 1065a.

If plaintiff's claims rest upon or are governed by this provision alone, manifestly, he cannot recover, for the right therein defined is conditioned upon the payment of the corporation tax, which as already stated, has not been made. He contends, however, that he does not need to rely upon this section at all, but that, irrespective of it, both his right and appropriate remedies for its enforcement are otherwise fully provided, and that these the section was not intended to and cannot validly destroy or withdraw.

We therefore first inquire what rights the Halls or plaintiff had at the time this provision was enacted, and then whether it is to be construed as destructive or restrictive of them. We assume, in harmony with the Commissioner's ruling, that the Hall Company was not in fact a personal service corporation, and therefore there was no legal duty on the part of the Halls to pay its tax, or legal right in the government to look to them or their property for its payment.

Under section 252 of the Revenue Act of 1918 (approved February 24, 1919, 40 Stat. 1085 [Comp. St. § 6336⅛uu]), the taxpayer was entitled to a refund of any excess paid, over and above any other taxes due from him, provided claim therefor was made within five years after return was due. In section 252 of the Act of November 23, 1921 (42 Stat. 268 [Comp. St. § 6336⅛uu]), there is a similar provision for the refund of taxes paid under any prior act, with an identical limitation, and a saving clause recognizing claims filed under section 252 of the act of 1918. By the Act of March 4, 1923 (42 Stat. 1504), this section of the 1921 act was amended in respect to the limitation of time, by providing that no refund should be made "unless before the expiration of such" period of "five years [from the time the return was due] a claim therefor is filed by the taxpayer, or unless before the expiration of two years from the time the tax was paid a claim therefor is filed by the taxpayer." In the Act of June 2, 1924, § 281 (43 Stat. 301 [26 USCA § 1065; Comp. St. § 6336⅙zz(8)]), there is a similar provision for refund respecting taxes paid under any prior act; the limitation for filing claims being four years from the date of tax payment. And by section 284 of Act Feb. 26, 1926 (44 Stat. pt. 2, p. 66 [26 USCA § 1065]), similar provision for refund is made, with a limitation of three years for taxes levied under that act, and four years for payments made under prior acts.

We do not stop to discuss the application of these somewhat complicated provisions to the facts here disclosed, for, as we understand, the government does not contend, and never has contended, that at any time they operated to bar, or they now constitute a bar to, plaintiff's claims.

As to enforcement by suit there is no provision in the several Revenue Acts expressly consenting to actions against the United States to enforce claims for refunds. Nor can it be said that section 1210 has any direct bearing upon that question. Such right, however, is recognized in subdivision 20 of section 24 of the Judicial Code (Code of Laws of the United States, approved June 30, 1926, 44 Stat. pt. 1, p. 867 [28 USCA § 41-(20)], giving to the District Courts jurisdiction concurrent with the Court of Claims, "of any suit or proceeding after the passage of the Revenue Act of 1921, for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected," etc., where, as here, the collector by whom the tax was collected is no longer in office.

[1] We have, then, the question whether section 1210 of the act of 1926 is to be construed as restricting the rights which the plaintiff had or the remedies available to him when that act was passed. His position is that it was designed to be purely remedial, while the government contends that, though that may have been its primary purpose, its plain language cannot be disregarded merely because, when applied to an exceptional case, as here, it is measurably restrictive in its operation.

We find no avenue of escape from the latter view. All the provisions for refund in prior acts were general, as are sections 284

and 1111 (26 USCA § 149) of the act of 1926. The section in question was the first and only provision specifically referring to refunds in connection with personal service corporations. It purports to be comprehensive with respect to that class, and contains no exceptions. Being specific, it must, within its reach, prevail over general provisions. U. S. v. Jackson (C. C. A.) 143 F. 783, 787. Fortifying this consideration, in opposition to plaintiff's necessary assumption that the section applies only to outlawed claims, we have the seemingly conclusive evidence of subdivision (c), which in express terms makes it applicable to claims against which the statute of limitations had not run.

In the legislative history of the section, we find little real assistance. It is true that, in presenting it as an amendment in the Senate, after the original bill had passed the House, the Senator offering it explained that it was to provide relief for claims barred by existing statutes; but, upon the other hand, he made it equally clear that the claims he referred to were in cases where both the stockholders and the corporation had paid taxes upon the same earnings, and where, therefore, it would be unjust for the government to retain both. Congressional Rec. Feb. 11, 1926, vol. 67, part 4, p. 3745. The report of the House conference committee, upon accepting the amendment, was of like import. Report No. 356, 69th Congress, First Session, upon Revenue Bill of 1926, p. 59.

While, upon first impression, the results from the operation of the provision, under this construction, may seem to be incongruous and harsh, its plain language cannot for that reason be distorted or set aside. But, after all, the equities supporting the claims do not furnish strong argument for a strained construction in favor of plaintiff. Admittedly taxes were due upon the earnings of the Hall Corporation for the years in question, and, that company being insolvent, they will be wholly lost to the government if the plaintiff now succeeds. For the situation as we find it, not the government, but the Halls, are measurably responsible. In a sense they stayed the hand of the government against the corporation by erroneously, if not wrongfully, representing that it was exempt, and by assuming the obligation of making return and themselves paying the tax. This course, it is to be borne in mind, was intended to be of advantage to them, and not to the government; for, by pursuing it, the income of the corporation, of which they were the beneficial owners, would escape with a lighter burden than otherwise it would bear. For their

22 F.(2d)—24

own benefit, therefore, they urged upon the government that the corporation was of such a character that the fiction of corporate identity should be ignored and the tax treated as their personal obligation. It follows that denial of the relief prayed for simply leaves them in the position in which they voluntarily placed themselves.

[2] The final contention of plaintiff, that it was incompetent for Congress to impose conditions, which in effect left the plaintiff remediless, we think is answered in Collector v. Hubbard, 12 Wall. (79 U. S.) 1, 20 L. Ed. 272. When there the taxpayer under protest paid the tax he sought to have refunded, the Revenue Act provided for an administrative appeal, but did not make it compulsory or a condition for maintaining suit in court. Claimant did not appeal, but, long after the time for appeal, brought suit. In the meantime, and after he had failed to appeal as provided by law, Congress passed an amendment prohibiting suit in any court "until appeal shall have been duly made" according to the existing provisions of law and the determination of such appeal. Denying his right to maintain the suit, the court said: "Remedies of the kind, given by Congress, may be changed or modified, or they may be withdrawn altogether, at the pleasure of the lawmaker, as the taxpayer cannot have any vested right in the remedy granted by Congress for the correction of an error in taxation."

The judgment is affirmed.