**OAK WORSTED MILLS v. UNITED STATES. ***

Court of Claims.   December 2, 1929.

No. 180.

The court made the following special findings of fact:

I. On or about March 12, 1919, the plaintiff, a corporation, filed with the collector of internal revenue at Philadelphia, Pa., for the calendar year 1918, a paper (form 1031 T) headed "Tentative Return and Estimate of Corporation Income and Profits Taxes and Request for Extension of Time for Filing Return," and on March 20, 1919, paid the sum of $20,000 as one-fourth of the estimated tax of $80,000 shown on said tentative return.

II. On June 16, 1919, the plaintiff filed a detailed corporation income and profits tax return for the calendar year 1918 on form 1120, provided by the Bureau of Internal Revenue, setting forth in the various schedules therein the detailed information provided for in said form, showing a total net income of $124,488.61, with a normal tax due of $4,158.30 and an excess profits tax of $87,836.07, making a total tax for said year of $91,994.37, and paid the balance of $71,994.37, due on said taxes in three installments during the year 1919, as follows:

| | |
|---|---|
| June 16, 1919............................... | $25,997 19 |
| September 15, 1919........................... | 22,998 59 |
| December 15, 1919........................... | 22,998 59 |

III. On or about June 27, 1921, plaintiff duly filed a formal application for assessment of its profits tax under the provisions of sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093). Said application was attached to a formal claim for refund of taxes alleged to have been illegally collected for the year 1918 in the sum of $33,425.75, and was based on said application for special assessment.

IV. In the month of April, 1922, the Commissioner of Internal Revenue, in consequence of said application and claim, caused plaintiff's tax liability to be computed under the relief provisions of said act,

*For opinion denying new trial, see 37 F.(2d) —.

and found, as a result thereof, that plaintiff had been overassessed the sum of $26,487.97. Said overassessment was made the subject of a certificate of overassessment bearing date of June 21, 1922, which was forwarded to and received by plaintiff together with a Treasury check in the sum of $26,487.97, and in due course plaintiff received the proceeds thereof.

V. On or prior to March 26, 1924, the Commissioner without plaintiff's knowledge or consent made a re-examination of plaintiff's application, and decided and so notified the plaintiff by letter dated that day that his previous determination in finding the total tax assessment to be $65,506.40 was erroneous, and decided that the "total tax liability" under sections 327 and 328 was $79,-262.42, and that additional tax in the amount of $13,756.02 was due, and shortly thereafter made an assessment of said additional tax. This assessment of additional tax was made more than five years after the instrument referred to in finding I was filed.

VI. On April 12, 1924, upon notice and demand for payment of said collector, plaintiff filed a claim in abatement of the alleged additional tax of $13,756.02, on the grounds that the matter had become res judicata, and was also barred by the statute of limitations and by the provisions of the revenue acts then in force.

VII. On or about February 11, 1925, the said Commissioner made another redetermination of plaintiff's tax liability for the year 1918, and notified plaintiff by departmental letter that the comparatives used in his previous redeterminations were erroneous, and that plaintiff had been overassessed $6,345.76, and that claim in abatement of $13,756.02 would be rejected for $7,410.26, and certificate of overassessment in the amount of $6,345.76 thereafter issued. On or about March 26, 1925, plaintiff filed an appeal from the alleged deficiency of $7,410.26 with the United States Board of Tax Appeals.

VIII. On June 1, 1925, said collector again demanded payment in writing, advising plaintiff that distraint warrant had been issued, and, unless payment was made promptly, said warrant would be placed in hands of deputy collector for personal service. On or about June 22, 1925, in the District Court of the United States for the Eastern District of Pennsylvania, a temporary restraining order was issued against the said collector pending disposition of a motion for a preliminary injunction, pending the aforesaid appeal to the Board of Tax Appeals, which said motion was denied on or about July 1, 1925.

IX. On August 27, 1925, said collector again demanded payment of the amount of $7,410.26, with interest in the sum of $592.-82, and, under threat of seizure and sale of plaintiff's property, payment of the total sum of $8,003.08 was made to collector, under protest, on September 10, 1925.

X. On November 18, 1925, the said appeal to the United States Board of Tax Appeals was dismissed on motion of counsel for the said Commissioner on the ground that the assessment had been paid, and therefore the said board was without jurisdiction.

XI. On May 7, 1927, plaintiff filed a claim, on form 843, for refund of $6,345.76 (or such greater amount as is legally refundable). Said claim for refund was rejected on or about February 15, 1928. The form of the claim for refund is not in controversy.

XII. The total tax as finally determined by the said Commissioner is $72,916.66, all of which, with interest in the sum of $592.-82, has been paid as aforesaid, and is retained by the United States. $688.32 was paid to the plaintiff as interest from December 27, 1921, to June 2, 1922, on the refund of $26,487.97 made in June, 1922, as overpayment on plaintiff's 1918 income and profits tax.

Upon the foregoing special findings of fact, which are made part of the judgment herein, the court decides, as a conclusion of law, that plaintiff is not entitled to recover, and its petition is therefore dismissed. Judgment is rendered against the plaintiff in favor of the United States for the cost of printing the record in this case, the amount thereof to be ascertained by the clerk and collected by him according to law.

William Meyerhoff, of Washington, D. C. (Guil Barber, of Washington, D. C., on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN and GRAHAM, Judges.

GREEN, Judge. A so-called tentative return was filed by the plaintiff on March 12, 1919, and as the assessment in controversy was made on March 26, 1924, the plaintiff claims that the five-year period of limitations for the assessment of taxes had expired, and that the assessment was therefore illegal. The defendant contends that the limitations period did not expire until five years from

June 16, 1919, when the completed return was filed, and this presents the first question for our consideration.

■ The Board of Tax Appeals has consistently held in a number of cases that the filing of the so-called tentative return did not start the running of the statute of limitations. See Matteawan Mfg. Co., 4 B. T. A. 953. In this conclusion we concur for many reasons which will require a review of the proceedings which lead up to the filing of the tentative return, in order to ascertain its purpose and what was understood with reference thereto by both the Bureau of Internal Revenue and the taxpayer. The "Revenue Act of 1918," was not approved until February 24, 1919 (40 Stat. 1057). It was quite plain to everyone that large business concerns and individuals having large business interests would have great difficulty in filing a return within the time required by law, and the Bureau of Internal Revenue would be deluged with requests for extension of time for filing returns. In fairness to the taxpayers, the most of these applications would have to be granted. The result would be to postpone the payment of taxes in such amount that the government might become embarrassed for want of revenues, for, although the World War was over, the government was still being carried on at an enormous expense. In order to overcome this difficulty, a plan was devised which provided the needed funds for the government, and certainly was a valuable concession to the taxpayers who brought themselves within its terms, by granting them an extension of time for filing complete returns. A circular was issued by the Commissioner on February 27, 1919, giving the particulars of this plan as follows:

"Income taxpayers, both corporation and individual, were today granted by the Internal Revenue Bureau further relief with respect to the filing of their completed tax returns for 1918. The statement that the taxpayer is unable by March 15 to execute and file the complete return will be accepted, under the new procedure, as sufficient reason for extending for forty-five days the time for filing complete income and excess-profits returns, provided in every case the taxpayer pays on or before March 15, at least 25% of the estimated amount of the tax due."

It further stated that a supply of blanks for the use of taxpayers would be furnished for making a tentative return, and that the due date for the payment of taxes would not be extended nor would the taxpayer be relieved of interest if the amount paid was short of the amount eventually found due. The blank form furnished to and used by plaintiff was headed, "Tentative Return and Estimate of Corporation Income and Profits Taxes and Request for Extension of Time for Filing Return," and contained no statement whatsoever showing the gross income, deductions, invested capital, or other details necessary for a proper determination of plaintiff's tax liability. It merely estimated the tax to be $80,000, and accordingly $20,000 was paid on the taxes. It specifically requested an extension of time for filing the "return," and in this connection we are at a loss to understand what return could possibly be meant except the return required by law. The tentative return was not only not required by the law, but there was no provision in the law for it. It was merely an invention of the Commissioner, and its purpose was to give the taxpayer an extension of time for filing the return required by law, and at the same time obtain the needed funds for the government. The statute (section 250, act of 1918) provided that the tax shall be assessed within five years "after the return was due or was made." What return? The return not authorized by law and not referred to in the statutes? Clearly not. It was the return which the law required and which was not made by the tentative return. The return on which the statute of limitations is made to depend is the return required by section 239, which is very different from the so-called tentative return. In this connection we have no reference to returns where the taxpayer attempts to comply with the law but through error or mistake does not completely conform to its requirements. We have here a case where there was no pretense as far as making the return was concerned that the law was being complied with. There was merely enough done so that the commissioner would grant the extension of time.

If we look at the matter from the standpoint of equity between the government and the taxpayer, we can come to no other conclusion. The government had five years in which to make an assessment on a different basis from the return, but surely this ought to be from the time when the taxpayer makes such a return as will enable the bureau to get at least some elementary knowledge as to how much tax he ought to pay. We think no one would contend that the taxpayer could merely file this tentative return and stop there without filing another and completed return, but, if the contention of the plaintiff is correct, and this was a real return in the sense

that the word "return" is used in the statute, nothing else was required.

It is argued that, if the tentative return was not a return at all, but merely an application or an agreement for an extension of time, the taxpayer was not bound to pay the first installment of his taxes until he filed the completed return. This argument overlooks the fact that the whole proceeding was a concession to the taxpayer beyond any requirement of the law, for the Commissioner might grant or refuse an extension in his discretion, and, having that right, he could prescribe the terms on which an extension should be granted. The proposition on the part of the Commissioner was simply that, if the taxpayer would file an estimate of his taxes and a request for extension of time for filing a return and make payment of one-fourth the estimated tax, the extension would be granted, and he had a right to make these requirements.

It is also argued that the government is taking inconsistent positions; that it says at one time that the tentative return was a return, and then, when its interests require the contrary, says it is no return, but we find nothing inconsistent in its position. It has at no time stated that the so-called tentative return would be considered as the return required by law. On the contrary, the fact that an extension of time was granted for filing a complete return shows very clearly that it did not so consider it, otherwise no extension of time would have been necessary; and, while we do not think it is material what the taxpayer understood, we are unable to see how it could have understood otherwise. The only meaning given in the dictionary to the word "tentative" which would at all apply to the situation under consideration is "experimental," and, while this meaning may apply to some features of the case, we are inclined to think that the common or colloquial meaning of the word "tentative" in such situations is with reference to something that will do or will answer for the time being, but no further.

For the reasons above stated, we concur in the view taken upon this question by the Board of Tax Appeals and by the Circuit Court of Appeals in the case of Florsheim Bros. Dry Goods Co. v. United States, 29 F. (2d) 895, and hold that the limitation did not begin to run until the completed return was filed and that the tax in question was assessed within the period prescribed by the statute.

Plaintiff also contends that the Commissioner of Internal Revenue, having determined the tax liability of the plaintiff in April, 1922, was without authority to revise it, and that his later action making a new assessment was in excess of his authority, and the new assessment was therefore illegal.

We do not think it is necessary to discuss this question at length. The practice of the commissioner in making new and different assessments is of so long standing, and has met with such general acquiescence, that this in itself constitutes a strong reason rejecting the contention of plaintiff. Ever since the federal income tax laws have been enacted, this practice has been going on. Congress has not merely acquiesced in it, but by various enactments has recognized the practice, and has gone so far as to provide in the Revenue Act of 1921 (42 Stat. 227), which of course was not applicable to this case, a limitation on the reopening of cases. The cases cited by plaintiff with reference to the acts of some official of the government whose action is by law made final have no application here. The determinations of the Commissioner are not binding on the taxpayer, but are merely a prima facie regulation. Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184. The distinction is clearly made in Fidelity & Columbia Trust Co. v. Lucas (D. C.) 7 F.(2d) 146, 149. In Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379, it appeared that the taxpayer filed a return and paid the tax on the basis thereof. Subsequently an additional assessment was made by the bureau and was paid. The implication of the decision, which held the taxpayer could not recover the amount of the additional assessment, was that the Commissioner could make changes in the original assessment; and it was expressly so held by the Board of Tax Appeals in Appeal of James Couzens, 11 B. T. A. 1040, a case where the government officials had fixed the amount of the tax which was paid by the party assessed.

While the tax in question was assessed within the period of limitations it was not collected within the time fixed thereby, and, if this case is controlled by the rule laid down in Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, the tax involved was unlawfully collected, and the plaintiff is entitled to recover. The defendant, however, contends that section 611 of the Revenue Act of 1928, which was passed subsequent to the decision in the Bowers Case, so modifies the rule laid down therein that the court should deny a recovery in the case at bar, and this contention presents a complicated question.

Section 607 of the act of 1928 (26 USCA § 2607) provides:

"Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act) after the expiration of the period of limitation properly applicable thereto *shall be considered an overpayment* and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." (Italics ours.)

Section 611 (26 USCA § 2611) provides:

"If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after the enactment of this Act) shall not be considered as an overpayment *under the provisions of section 607,* relating to payments made after the expiration of the period of limitation on assessment and collection." (Italics ours.)

There can be no question of what these sections mean. In plaintiff's argument it is said:

"Read together these sections provide that taxes assessed or paid out of time shall be credited or refunded to the taxpayer if a timely refund claim is filed *except* in cases of timely assessment made before June 2, 1924, and a claim in abatement was filed and collection of any part of the tax was stayed." With this statement we agree.

But plaintiff insists that they have no application to this case, and that, if so construed as to deprive plaintiff of the right of recovery herein, the sections are unconstitutional.

Further in argument the plaintiff insists that section 611 has no reference to suits on the part of taxpayers, and merely defines the authority of the officials of defendant in making refunds or credits. In support of this position it cites the cases of Clinton Iron & Steel Co. v. Heiner (D. C.) 30 F.(2d) 542; Erie Coal & Coke Co. v. Heiner (D. C.) 33 F.(2d) 135; and Gile & Jenks v. Huntley, Collector (D. C.) 29 F.(2d) 209. All of these cases support the contention of plaintiff, but upon careful examination we are unable to agree to the rules laid down therein. In this connection, it should be noted that the case last above cited was reversed by a decision of the Circuit Court of Appeals to which reference will hereinafter be made.

In considering this contention, it should be observed at the outset that it is quite inconsistent with the meaning which is given by plaintiff's counsel to the two sections under consideration, and with which meaning, as stated in the quotation from plaintiff's argument set out above, we agree. Our reasons for differing from these decisions cited by plaintiff are as follows:

It appears to us that Congress, by the provisions in the Revenue Act of 1928, was endeavoring to establish a rule whereby a condition of repose would be established, and, when taxes had been paid after the statute of limitations had run, but which were due and ought to have been paid by the taxpayer before the expiration of the time of limitations, such taxes could not be recovered by the taxpayer. Whether this general observation may be correct or not, we think it quite clear that the construction of sections 607 and 611 (26 USCA §§ 2607, 2611) adopted in the decisions cited on behalf of plaintiff is not correct, and that this will appear from a consideration of the logical effect of such construction.

As we understand the argument in favor of the rule adopted by these decisions, the reason for the holdings therein is based largely upon the fact that in neither of these sections is there any reference to court proceedings, actions, or suits. But this is not necessary if the specifications made in the statute would make a suit unavailing.

Section 607 (26 USCA § 2607) specifies the kind and nature of cases in which what is denominated an overpayment may arise by reason of the collection of taxes after the expiration of the period of the statute of limitations, although such taxes were originally due and owing by the taxpayer. Section 611 (26 USCA § 2611) makes an exception to the rule laid down in section 607, and in effect provides, with reference to cases included in this exception, that no "overpayment" shall arise. Necessarily it follows that, if demand is made upon the collector for the refund or return of taxes paid after the running of the statute of limitations but which come under this exception, the collector is obliged to say that he is forbidden by law to repay them. It will be observed in this connection that the decisions cited by plaintiff assert that these sections are merely directions to the Commissioner, collector, or other officials of the Government, and nothing more, and therefore, notwithstanding their provisions, suit may be brought and maintained to recover the tax. The doctrine laid down by these decisions as

to cases which come under the exceptions of section 611 would create a situation that is very peculiar to say the least. If, for example, a demand is made upon a collector for repayment, he must say that he is forbidden by law to make it, but, if suit is begun against him for the same thing for which demand was made, it can be maintained, and judgment can be entered against him. That Congress intended anything so inconsistent and useless we think no one will contend. When the language of the two sections is considered, we think it will be seen there is nothing in them which requires such a construction. True, as before stated, there is nothing said with reference to courts or court proceedings, but court proceedings are not the basis upon which actions are maintained in actions like the one at bar. That depends upon the rights of the plaintiff, and its rights are fixed by these sections. If the plaintiff's case came within the provisions of section 611, it had no right to repayment. This makes it necessary for us to consider as to whether its case is in fact included within the provisions of this section.

It is also contended by plaintiff that section 611 applies only to cases of voluntary payment and also to cases where "the collection of any part thereof (of the claim) was stayed," and that the collection of the taxes involved in the instant case was not in fact stayed.

■ As to the first contention, we think the language of the statute shows clearly that it is not well founded. The section relates to cases where a plea in abatement was filed, which in itself would show that the tax was paid unwillingly. This contention also is contrary to the meaning given to the section by the report of the committee which presented the act to Congress, which will be hereinafter set out in connection with the second objection.

The second objection presents a more difficult question, and for its proper consideration it will be necessary to examine that part of the report of the Ways and Means Committee on the Revenue Act of 1928 which explains the purpose of section 611 (26 USCA § 2611) and the conditions which it was intended to meet. It is as follows:

"Prior to the enactment of the revenue act of 1924, it was the administrative practice to assess immediately additional taxes determined to be due. Upon the assessment, taxpayers were frequently permitted to file claims in abatement with the collector and thus delay the collection until the claim in abatement could be acted upon. If this practice had not been followed, undue hardship undoubtedly would have been imposed upon the taxpayer. It was supposed that there was no limitation upon the collection by distraint of the amount ultimately determined to be due. However, the Supreme Court has recently held in a case in which the period for assessment expired prior to the enactment of the 1924 act, that the period for collection was limited to five years from the date on which the return was filed. Decisions upon claims in abatement are being made every day. Amounts have been paid, are being paid, by the taxpayer even though the statute of limitations may have run. Exceptionally large amounts are involved. Accordingly, it is of utmost importance to provide that the payments already made should not be refunded. In order to prevent inequality, it is also provided that the amounts not yet paid may be collected within a year after the enactment of the new act.

"Your committee appreciates the fact that this provision will probably be subjected to severe criticism by some of the taxpayers affected. However, it must be borne in mind that the provision authorizes the retention and collection only of amounts properly due, and *merely withdraws the defense of the statute of limitations*. If it is determined that the amount paid is in excess of the proper tax liability, computed without regard to the statute of limitations, such excess will constitute an overpayment which may be refunded or credited as in the case of any other overpayment." Report No. 2, 70th Congress, 1st session, p. 34. (Italics ours.)

A reading of this excerpt from the report leaves no possibility of doubt about the intent and purpose which Congress undertook to embody in section 611 (26 USCA § 2611). As before stated, the statute only applies to cases where the taxpayer had paid, after the running of the statute of limitations, taxes which had been rightfully due and owing to the government. There is no equity in a claim for the refund of such taxes in any event, but the statute restricts the government in retaining them to those cases only where as a favor to the taxpayer the government had permitted the filing of a plea in abatement and collection was stayed; or, in other words, to those cases where the taxpayer, by filing a plea in abatement, had succeeded in delaying the case over the period of limitations, and then sought to take advantage of the favor that had been granted him.

The argument made by the plaintiff is that during the period under consideration there was no provision for a plea in abatement in the law, and especially that there was nothing in the plea of abatement that would, under the law, in any event operate as a stay upon the collection of the tax. This may be admitted, but, if the statute applies only to taxes the collection of which was stayed by the plea in abatement, it becomes a practical nullity, for it could only apply to a small number of cases arising under the act of 1924 (43 Stat. 253), which provided for the filing of a plea in abatement and bond to stay proceedings, if indeed it had any application at all. The language of section 611 (26 USCA § 2611), and the statement made in the report, we think, forbid any such construction. The section is not limited to cases where the collection is stayed by the filing of a plea in abatement, but simply to cases where the collection "was stayed," and we think the words "was stayed" were purposely used instead of "is stayed." Congress intended the act to apply to the conditions set out in the report showing that in numerous cases taxpayers had filed claims in abatement and delayed the collection until the claim in abatement could be acted upon. In this case the collector, in March, 1924, demanded payment of the tax in controversy and the plaintiff filed a plea in abatement, whereupon nothing more was done until February, 1925, when the commissioner passed on the claim in abatement and allowed it in part, of which the plaintiff was notified, and in March of the same year plaintiff filed an appeal from the deficiency fixed by the last determination to the United States Board of Tax Appeals. No further action was taken by the collector until June, 1925. It thus appears that plaintiff was granted a stay upon filing the plea in abatement. The word "stay" as used in ordinary conversation means to hold from proceeding, to postpone, or to keep back. In law, it generally means to suspend by judicial proceedings. We think it was not used in the statute in its strict legal meaning but in its ordinary sense, and, when we give it that meaning, it is quite clear that the collection was stayed by the collector or Commissioner, and there can be no doubt but that in so holding we are following the intention of Congress as expressed in the report to that body which explained the meaning and purpose of section 611. To put the construction on the statute contended for by plaintiff requires us to attribute to Congress the absurdity of declaring that, unless a stay was brought into effect by an act

which did not and could not produce a stay, the statute would not operate, and thus the statute would nullify itself. It needs no citations to show that it is our duty to so construe the statute as to give it some force and effect, when this can be done consistently with its language. The construction given, in our opinion, not only accords with the language used, but is the only construction that could properly be given.

These conclusions are supported in part, if not entirely, by the opinion rendered in the case of Clyde G. Huntley, Collector, v. H. S. Gile and W. T. Jenks by the United States Circuit Court of Appeals for the Ninth Circuit, 32 F.(2d) 857, 859, reversing Gile & Jenks v. Huntley (D. C.) 29 F.(2d) 209, cited by counsel for plaintiff; and also the case of Regla Coal Company v. Bowers, 37 F.(2d) 373, decided by the District Court, Southern District of New York, November 13, 1929, C. C. H. D–9415, p. 8888. The decision in the case last cited contains an elaborate discussion of the proper construction of sections 607 and 611 (26 USCA §§ 2607, 2611) and the constitutional question raised in connection therewith. On all of these matters the same conclusion is reached as is set forth in this opinion. In the Huntley Case, supra, attention is called to the fact that, if it be held that the statutory provisions have no application to taxes collected after the period of limitations has expired, the statute is useless and meaningless. There would, of course, be no occasion or use whatever for the statute in cases where the tax was collected prior to the expiration of the period of limitations. The only reason for enacting the statute in question was the fact, as shown by the report of the committee, that "amounts have been paid, are being paid, by the taxpayer even though the statute of limitations may have run." It is quite evident that the intention of the lawmakers was that the statute should apply to taxes collected after the statute of limitations had run.

Objection has been made that the construction contended for by defendant is retroactive, and that a statute ought not to be construed as having retroactive application, unless it appears that Congress had such intent. The provisions of the statute under consideration are retroactive in form, and, if anything further is need to show the intent of the legislative body enacting it, it will be found in that portion of the report accompanying the act of 1928 which has already been set out in this opinion. The report makes it clear that the sole purpose of the provision was to

obviate the effect of the decision in the case of Bowers v. New York & Albany Lighterage Co., supra, and to apply to cases arising under prior acts.

One other point remains to be decided. It is further contended that, if the statute is construed in accordance with our holding, it is unconstitutional and invalid, for the reason that it would deprive plaintiff of a vested right. If plaintiff acquired such a right, it was by virtue of the statute of limitations. In Huntley v. Gile & Jenks (C. C. A. 9th Dist.) supra, it is said, "no vested right accrues to the taxpayer out of the running of the period of limitation for the collection of a valid tax," citing Rafferty v. Smith, Bell & Co., 257 U. S. 226, 42 S. Ct. 71, 66 L. Ed. 208; United States v. Heinszen & Co., 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; Collector v. Hubbard, 12 Wall. 1, 20 L. Ed. 272; Haight v. United States (C. C. A.) 22 F.(2d) 367; Campbell v. Holt, 115 U. S. 620, 6 S. Ct. 209, 29 L. Ed. 483; Railroad Co. v. Alabama, 101 U. S. 832, 25 L. Ed. 973; Beers v. Arkansas, 20 How. 527, 15 L. Ed. 991; West Side Co. v. Pittsburgh Co., 219 U. S. 92, 31 S. Ct. 196, 55 L. Ed. 107; Brushaber v. U. P. R. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Lynch v. Hornby, 247 U. S. 339, 343, 38 S. Ct. 543, 62 L. Ed. 1149.

These authorities would seem to dispose of the point last considered, but, before concluding, attention is especially directed to another rule which, in our opinion, effectually precludes this court from considering plaintiff's claim.

Nothing is better settled than the principle that the legislative branch of the government has complete right and authority to determine when, how, and where the government shall be sued, and whether it can be sued at all. If Congress sees fit to provide that a suit cannot be maintained for taxes paid, it is clear (at least where the taxes were rightfully imposed) that they cannot be recovered. "Where a statute creates a right and provides a special remedy, that remedy is exclusive." United States v. Babcock, 250 U. S. 328, 331, 39 S. Ct. 464, 465, 63 L. Ed. 1011. The constructions which we have heretofore put on sections 607 and 611 of the Revenue Act of 1928 (26 USCA §§ 2607, 2611) specify in what cases suits may be maintained to recover taxes paid which in their origin were valid and due from the taxpayer. If we are correct in this, then by clear implication only such suits as are permitted by these two sections can be maintained on the ground that the tax had been paid after the running of the statute of limitations, and that such was the intention of Congress we think admits of no doubt. As we find that plaintiff's claim does not belong to a class for which suit may be brought, this court has no authority or jurisdiction to approve it, regardless of whether the rights of the plaintiff had vested or not.

It follows that the petition of the plaintiff must be dismissed, and it is so ordered.

WILLIAMS and LITTLETON, Judges, did not hear and took no part in the decision of this case.

BOOTH, Chief Justice, and GRAHAM, Judge, concur.