**VANDERLIP v. UNITED STATES.**
No. 41993.

Court of Claims.
May 7, 1934.

Ellsworth C. Alvord, of Washington, D. C. (Ralstone R. Irvine and Carbery O'Shea, both of Washington, D. C., on the brief), for the plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The pertinent facts of this case are stated in the findings and the opinion of the court. The record is not open to serious controversy, for it is made up as to vital issues involved upon documentary evidence. If the unlimited waiver of the statute of limitations executed in accord with section 250 (d) of the Revenue Act of 1921, 42 Stat. 265, is a valid and binding one, it is then apparent that the collection of the tax for which a refund is herein claimed was timely. To this issue the opinion of the court is addressed.

On October 2, 1921, the plaintiff's attorney in fact, acting under a written and duly executed power of attorney so to do, signed an unlimited waiver of the statute of limitations as to the assessment and collection of the tax herein sought to be recovered. This waiver was lawfully signed by the Commissioner and duly filed in the Bureau. On March 10, 1923, the Commissioner notified the plaintiff that the waiver was invalid and that a jeopardy assessment of an additional tax of $77,836.17 would be made immediately. The five-year period for the assessment and collection of the tax expired on April 1, 1923, and the jeopardy assessment was made by the Commissioner on March 31, 1923. On April 26, 1923, the plaintiff filed a claim for abatement of the additional tax, and thereafter on January 30, 1926, the Commissioner abated $13,920.09 of the tax. The Collector on March 10, 1926, collected from the plaintiff $63,916.08, together with $10,478.73 interest. Thus it appears that the assessment of the additional tax was timely. The collection of the same is challenged, among other grounds, on the asserted invalidity of the waiver. The power of attorney conferred upon plaintiff's attorney in fact the unrestricted right and authority to do all things essential to be done concerning plaintiff's business and financial affairs, except sign deeds for real property. This instrument is comprehensive in its provisions; the plaintiff was abroad and intentionally made it so. He was a person of large means and large estate involving a multiplicity of business transactions which inevitably included the item of taxation, a fact which, if the plaintiff did not actually know, he must be charged with knowing.

The plaintiff's argument is addressed to a contention that the power of attorney did not authorize the waiver of any of plaintiff's rights. To sustain the same a great number of state and federal cases are cited. We will not review them because they simply exemplify the fundamental rule that the authority to act under such a written instrument must be ascertained from the terms of the same. In other words, its scope is limited to its provisions.

Tested by this familiar rule of law, the power of attorney in this case, after specifying certain subjects included within its scope, recites as follows:

"To settle, compound, compromise, and adjust by payment or otherwise any claims or demands which may be made against me; and, in general, to have the full and complete charge and management of my property and interests, and to do any act or thing in relation thereto which may to him seem advisable, in the same manner and to as great an extent as if the same belonged to him personally (except to sell real estate * * *)."

It is hardly necessary to emphasize the scope of conferred authority to "settle, compound, compromise," and adjust claims. In each instance the surrender, as well as the acquisition, of legal rights, is distinctly involved if the transaction becomes effective. The collection of an income tax unpaid is generally preceded by a demand for payment, and assuredly it is an enforceable claim which under certain circumstances may be summarily enforced. This plaintiff, in the name of his attorney in fact and under the precise power of attorney now challenged, filed a refund claim on August 19, 1921, for $572.67 for an alleged overassessment of 1916 taxes, and the same was allowed, the refund made and accepted. Aside from other rules of law deemed invulnerable, the plaintiff may not recognize the validity of the power of attorney when it is to his interest so to do, and subsequently repudiate it when adjustment of his later taxes demonstrates that by so doing he may secure an additional and substantial refund thereof. Naumkeag Steam Cotton Co. v. United States, 2 F. Supp. 126, 76 Ct. Cl. 687; Id., 289 U. S. 749, 53 S. Ct. 694, 77 L. Ed. 1495.

After the execution of the waiver under discussion, the plaintiff filed a claim in abatement of the additional tax for 1917. The Commissioner, acting upon the abatement claim, abated $13,920.09 of the additional tax on January 30, 1926, reducing the amount of the tax from $77,836.17 to $63,916.08. Therefore, it is apparent that at the time of the execution of the waiver the plaintiff, acting through his attorney in fact, gained a substantial benefit by waiving the statute of limitations for the collection of the additional tax. A lawful waiver of the statute of limitations for the collection of a tax may not be said to be indubitably a waiver of a right, for the provision of law granting such a procedure comprehended the difficulties inherent in the ascertainment of the correct tax in involved and great estates and business transactions, and the right of waiver is of mutual benefit to both the taxpayer and the government. Its filing stays immediate collection of the tax and results not infrequently in substantial refunds and credits which a time limit would otherwise prohibit. Aldridge v. United States, 64 Ct.

Cl. 424; Colonial Trust Co. v. United States, 55 F.(2d) 512, 73 Ct. Cl. 549, certiorari denied 286 U. S. 560, 52 S. Ct. 643, 76 L. Ed. 1294. The instant case demonstrates exactly what is meant, for as late as 1926 the plaintiff received an abatement of his tax liability as herein pointed out.

The Commissioner approved the waiver, and the statute in this respect was fully complied with. Later, he advised the plaintiff that a waiver executed by an attorney "is held to be invalid," and proceeded to resort to a jeopardy assessment of the additional tax. No reason appears of record why the Commissioner determined the waiver to be invalid except that it was executed by an attorney. In this instance it was executed by an attorney in fact and unless some legal impediment existed which in and of itself precluded the possibility of an attorney in fact acting for another under a letter of authority sufficient in terms to authorize the act, it would seem as though the Commissioner exceeded his authority in holding the same invalid. To hold otherwise would be to repose in the Commissioner the right to construe instruments of this character, in view of the statute, and thereby prejudice the express rights which the statute gives to both the taxpayer and the government.

While it was optional with the Commissioner under the statute to accept the waiver, once having signed it, it was a valid waiver and continued in effect until' terminated under the law or legal regulations of the Commissioner.

The plaintiff in his own name ratified and confirmed the action of his attorney in fact in filing the waiver, and received substantial benefits from so doing. On April 26, 1923, the plaintiff individually filed the claim in abatement and his tax liability was decreased thereby to the extent of $13,920.09. The plaintiff must have known, at least knowledge is by law imputed to him, that the statute of limitations for the collection of the tax had expired more than twenty days prior to the filing of this claim, and notwithstanding the jeopardy assessment of the tax, if the plaintiff intended to rely upon the expiration of the statute of limitations for collection then was the time to assert the right. The waiver being valid, the collection of the tax was timely.

Much is said with respect to 'the practice of the Bureau obtaining at the time the facts set forth in the findings transpired. It is sufficient to observe that the practice stated was found by the Supreme Court to be contrary to law. Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676. The petition is dismissed. It is so ordered.

LITTLETON, Judge.

I concur in the decision dismissing the petition on the ground that, if the waiver was invalid, the provisions of section 611 of the Revenue Act of 1928 (26 USCA § 2611) are applicable and preclude recovery of the amount sued for which is not claimed to have been in excess of the tax due for the year involved.

The Commissioner of Internal Revenue proceeded throughout in accordance with his published decisions, namely, that the statute of limitation did not apply in any case to collection of a tax by demand of the Collector or by distraint if a timely assessment thereof had been made. I—1 C. B. 305; I—2 C. B. 218. In such cases it was the practice to assess the tax within the period provided in the statute, invite a claim for abatement, and postpone efforts to collect awaiting the filing of a claim for abatement, and, if such a claim was filed, to further withhold collection until a decision had been made thereon. Under this practice collection of the tax was made in many cases after it had become barred and, had section 611 not been enacted, the amounts so collected would have been refundable under the decision in Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, decided February 21, 1927. In that case it was held (1) that distraint by the Collector was a proceeding within the meaning of section 250 (d) of the Revenue Act of 1921; (2) that collection of the tax became barred upon the expiration of five years after the return was filed, unless the period was extended in accordance with the statute; and (3) that a tax collected after the expiration of the statutory period of limitation could be recovered in a suit by the taxpayer. As a result of the situation thus arising and in order to withdraw the defense of the statute of limitation to the collection of a tax not in excess of the amount due in cases where, under the administrative practice, the Department had delayed collection believing same was not barred, and where a claim in abatement was filed, section 611 of the Revenue Act of 1928 was enacted. This section follows:

"If any internal-revenue tax (or any interest, penalty, additional amount, or addi-

tion to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after the enactment of this act [May 29, 1928]) shall not be considered as an overpayment under the provisions of section 607 [section 2607], relating to payments made after the expiration of the period of limitation on assessment and collection."

The act of 1928 was introduced in the House of Representatives early in December 1927, and the Committee on Ways and Means, to which it was referred, recommended its passage in House Report No. 2, December 7, 1927, 70th Congress, 1st Sess., and, on page 34, made the following explanation of the purpose of section 611:

"Sec. 611. Collections in Cases in Which Claims in Abatement Were Filed.

"Prior to the enactment of the Revenue Act of 1924 it was the administrative practice to assess immediately additional taxes determined to be due. Upon the assessment, taxpayers were frequently permitted to file claims in abatement with the collector and thus delay the collection until the claim in abatement could be acted upon. If this practice had not been followed, undue hardship undoubtedly would have been imposed upon the taxpayer. It was supposed that there was no limitation upon the collection by distraint of the amount ultimately determined to be due. However, the Supreme Court has recently held in a case in which the period for assessment expired prior to the enactment of the 1924 act, that the period for collection was limited to five years from the date on which the return was filed. Decisions upon claims in abatement are being made every day. Amounts have been paid, are being paid, by the taxpayer even though the statute of limitations may have run. Exceptionally large amounts are involved. Accordingly, it is of utmost importance to provide that the payments already made should not be refunded. In order to prevent inequality, it is also provided that the amounts not yet paid may be collected within a year after the enactment of the new act.

"Your committee appreciates the fact that this provision will probably be subjected to severe criticism by some of the taxpayers affected. However, it must be borne in mind that the provision authorizes the reten-

tion and collection only of amounts properly due, and merely withdraws the defense of the statute of limitations. If it is determined that the amount paid is in excess of the proper tax liability, computed without regard to the statute of limitations, such excess will constitute an overpayment which may be refunded or credited as in the case of any other overpayment."

When the Revenue Bill of 1928 came before the Senate early in May, 1928, section 611 was entirely eliminated by Senate Amendment No. 190 on the ground that the statute of limitation should be made effective as to both the government and the taxpayer. See Senate Finance Committee Report No. 960, May 1, 1928, 70th Congress, 1st Sess., page 42. The section was restored in conference with an amendment to the section as passed by the House eliminating a provision that, in cases falling within the section, "a distraint or proceeding in court for the collection of such part may be begun within one year after the enactment of this act." The conference report, No. 1882, 70th Congress, 1st Sess., stated, on page 22, as follows: "Amendment No. 190: The House bill (sec. 611) provided that in cases in which a tax was assessed within the period of limitation upon assessments and thereafter (whether before or after the expiration of such period) a claim in abatement was filed, with or without a bond, and if proceedings for the collection of the tax were not promptly instituted (as would have been the case had the claim in abatement not been filed), then (1) if any part of the amount covered by the claim in abatement was thereafter paid, such amount should not be refunded, solely because of the fact that it was paid after the running of the statute, and (2) in cases where the amount was not paid, it could be collected by distraint or proceedings in court begun within one year after the enactment of the new law. The Senate amendment struck out this section; and the House recedes with an amendment retaining the prohibition upon refunds, as above described, and eliminating the authority for collection."

Plaintiff construes the section as applying solely to cases where timely collection was not made because of the filing of a claim in abatement before the expiration of the statutory period for collection. But this construction seems to be too narrow. The language of the section discloses a purpose to withdraw the defense of the statute of limitation with respect to collection of a tax not

in excess of the amount due in those cases where the department delayed collection in order that the taxpayer might receive the benefit, through an abatement claim, of a full and thorough consideration of the case before being required to make payment. I think a proper construction of the section does not require the holding that collection within the statutory limitation period must have been stayed by an abatement claim previously filed. Congress recognized· that in those cases where assessment of a tax had been made without previously giving notice thereof and affording the taxpayer an opportunity for a hearing collection was withheld in order that the taxpayer might have consideration of the case after a hearing on an abatement claim and appeal. It also knew that in a great many cases the assessment was made very near the last day of the period of limitation; that it was the practice to allow at least ten days after assessment for the filing of an abatement claim and that this time was frequently extended. I think it is clear therefore that the word "stayed" was used in the sense of delayed or postponed, and had reference to a stay before, as well as after, the filing of the abatement claim. This seems clear enough from the fact, as disclosed in the committee reports, that the primary purpose of the section was to validate collections made after the expiration of the applicable period of limitation because of the erroneous view consistently followed by the department, that such limitation did not apply to collection where timely assessment had been made. Compare Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 190, 75 L. Ed. 415. Congress, however, did not deem it proper to withdraw from the taxpayer the right to rely upon the statute of limitation unless he had availed himself of the extended privilege of filing a claim for abatement of the assessment, the collection of which had been withheld or postponed for that purpose. The revenue statutes authorized the Commissioner, when he believed that collection of the tax due would be jeopardized by delay, to make assessment and collection thereof without giving the usual thirty-day notice or awaiting the conclusions of a hearing. In such case the taxpayer had a remedy through a claim for refund. However, in the case at bar, the Commissioner, when he advised the taxpayer on March 10, 1923, that immediate assessment of an additional tax would be made, in order that collection might not be jeopardized by delaying the assessment until after no-

tice and appeal under section 250 (d) of the Revenue Act of 1921, did not promptly institute a proceeding to collect but invited a claim for abatement and appeal prior to collection. The tax was assessed on March 31, one day before the statutory period of five years for assessment and collection expired. No steps to collect were taken by the Collector at New York, and·on April 23 the Commissioner wired the Collector to accept a claim for abatement. The abatement claim was accordingly filed three days later and shows that a hearing before the Commissioner on the matter of the correctness of the amount assessed had been arranged for June 27, 1923. The case of Graham & Foster v. Goodcell, supra, clearly lays down the rule that the stay referred to in section 611 does not need to be a legal stay to make that section applicable. In that case the plaintiffs contended that "the stay to which section 611 referred was not ·simply a voluntary delay in enforcing payment." But the court said the word "stay" could not be limited to a mandatory stay, and that a postponement by the Commissioner, while acting under the belief that the statute did not bar proceedings for collection, "created the situation to which section 611 was directed." This is the situation which we have in the case at bar. The findings show that the Commissioner, believing that proceedings for collection by distraint were not barred, postponed the collection of the tax to permit the filing of a claim for abatement, which, upon its filing, further postponed collection until the claim was decided. The filing of the abatement claim in the instant case, as a matter of law, did not operate to stay the proceedings. The stay was entirely voluntary on the part of the Collector, but, as stated in Graham & Foster v. Goodcell, supra, it was voluntary proceedings that Congress intended to be covered by section 611. In the case of Oak Worsted Mills v. United States, 36 F.(2d) 529, 68 Ct. Cl. 539, a claim for abatement was filed at a time when there was no authority under the statute for such action. In other words, the abatement claim was a nullity except as it. was given effect by section 611. See, also, Petroleum Iron Works v. United States, 5 F. Supp. 558, decided by this court January 8, 1934. In the case at bar the claim for abatement in itself could not and did not accomplish a legal stay. It did, however, delay the collection of the tax after the Commissioner had made a jeopardy assessment and when all parties concerned appear to have proceeded on the theory that the tax could still

972

be legally collected. The statute of limitation was not pleaded in the claim for abatement of the assessment. Section 611 must be interpreted in the light of the purpose intended to be accomplished, and, when so construed, I think it is applicable to the case at bar and precludes recovery of the tax and interest paid March 10, 1926. The section makes no distinction between an abatement claim filed within the limitation period and one filed afterward, and I think none was intended. Congress did not proceed in the enactment of this section on the theory that an abatement claim constituted a waiver of the limitation statute, nor that the filing of such claim revived the legal right to collect a tax otherwise barred. It recognized that collection of a tax after the applicable period of limitation was illegal under provisions of other acts, whether an abatement claim was filed before or after the expiration of such period. The section was wholly designed to take away from the taxpayer the right to obtain a refund of a tax correctly due in a case where it had been timely assessed, collection stayed, and a claim for abatement filed. It simply prescribed three conditions under which a payment made after the expiration of the applicable period of limitation should not be considered an overpayment. The plaintiff's construction requires that a fourth condition be added, namely, that in order for the section to become applicable the abatement claim must have been filed within the statutory period for collection. Had this been intended, the section would doubtless have been differently worded.

On the whole, I am of opinion that section 611 withdraws the defense of the statute of limitation in all cases where proceedings for collection of the tax were not promptly instituted, because of the belief that the statutory limitation did not apply to collection of a tax timely assessed, and where a claim for abatement was filed, whether such filing occurred before or after the expiration of the limitation period.

In reaching this conclusion I have not overlooked the decisions in Neuland v. Bowers (D. C.) 38 F.(2d) 842, and G. C. M. 4879, VII—2 C. B. 9, to the effect that collection of the tax must have been stayed by a claim for abatement filed before the expiration of the statutory period for collection; however, I am unable to concur in these decisions for the reasons hereinbefore stated.

I am authorized to state that Judge GREEN and Chief Justice BOOTH concur in this opinion.