# WEST SIDE BELT RAILROAD COMPANY *v.* PITTS-BURGH CONSTRUCTION COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF PENN-SYLVANIA.

No. 681.   Motion to dismiss or affirm.   Submitted December 5, 1910.—
Decided January 3, 1911.

When plaintiff in error asserts that the state court has not given due
faith and credit to a prior judgment of a Federal court between the
same parties, he asserts a right under the Constitution of the United
States and a Federal question is raised, and, unless manifestly
frivolous, the writ of error will not be dismissed.

In this case the consideration given to the Federal question by the
state court demonstrates that it is not so far frivolous as to sustain a
motion to dismiss.

Where the action is based on counts upon a contract and also upon
*quantum meruit* and the evidence to sustain the latter is ruled out,
the action rests solely on the contract and the right to maintain it is
determined as though brought solely on the contract.

Where an action was dismissed by the Circuit Court of the United
States on the sole ground that plaintiff, a foreign corporation, could
not sue owing to non-compliance with a state statute, the effect to
be given to that judgment in a subsequent action between the same
parties in the state court after a curative statute has been enacted
raises a Federal question.

Where the State by statute gives a person the right to avoid a con-
tract for a purpose of its own and not because of the merits of the
obligation, it may, so long as the matter remains *in fieri*, take that
right away; and so held that a curative statute allowing foreign
corporations who had not complied with the registration statute to
sue, on complying therewith, on contracts made before registration,
is within the power of the State, and a judgment entered in an ac-
tion on a contract in the state court brought after the curative stat-
ute does not deny full faith and credit to a judgment of the Federal
court entered in an action between the same parties dismissing the
complaint on same cause of action solely on the ground that plain-
tiff had not complied with the registration laws.

The act of Pennsylvania of May 23, 1907, P. L. 205, validating contracts made by foreign corporations which had not complied with registration laws, was within the power of the State and in this case was held to apply to a contract which the courts theretofore had refused to enforce on account of the non-compliance with such registration laws.

227 Pa. St. 90, affirmed.

THE facts, which involve the validity of a statute of Pennsylvania validating contracts made by foreign-corporations and the effect to be given to a judgment of the Federal court, are stated in the opinion.

Mr. *Thomas Patterson,* for plaintiff in error, in opposition to the motion:

The effect to be given a Federal judgment in any subsequent proceeding in a state court, where such judgment is pleaded, raises a Federal question that is reviewable here. *Pittsburgh R. R. Co.* v. *Loan & Trust Co.,* 172 U. S. 493; *Deposit Bank* v. *Frankfort,* 191 U. S. 499.

The judgment of a court of record in Pennsylvania being conclusive upon the parties, and not open to collateral attack or inquiry, the effect necessarily to be given by the court of Pennsylvania to the judgment of the Federal court, is that of a judgment which is as a plea a bar and as evidence conclusive in any further litigation between the parties. *Hancock National Bank* v. *Farnum,* 176 U. S. 640; *Stevens* v. *Hughes,* 31 Pa. St. 384.

Full force and effect was not given in the case at bar to the judgment of the Circuit Court of the United States for the reason that the contract, which was the basis of the suit in the Federal court and by it declared void, was held valid and binding in the later suit in the state court. The contract was the same as that sued on in the Federal court, the parties the same, and the judgment of the state court was a direct reversal of that of the Federal court.

The defendant in error has never sued solely for its

services performed, but always on its contract and award.
Plaintiffs in error have never objected that the defendant
in error could not sue on a *quantum meruit* for services
performed, but have always fought the allowance of the
award.

A disposition of a case upon its merits arises where the
cause of action is determined finally as either good or bad.
It is not as where the case goes off on some collateral
matter. *Roney* v. *Westlake*, 216 Pa. St. 374. In this case
the contract itself was before the court and declared void.
*Coppell* v. *Hare*, 7 Wall. 558.

The act of May 23, 1907, did not revitalize the con-
tract which the United States court had declared invalid,
so that it might furnish the basis of a new cause of action.

A man has a vested right in his title, in his freedom
from obligation which he has not legally entered into, and
in a defense adjudged in his favor. *United States* v. *Leffler*,
11 Pet. 86; *Ewell* v. *Daggs*, 108 U. S. 151; *Gross* v. *U. S.
Mortgage Co.*, 108 U. S. 488; *Erskine* v. *Steele Co.*, 87 Fed.
Rep. 630; aff'd 98 Fed. Rep. 215.

The obligations of private parties must be determined
by the law in force at the time of the transaction out
of which they accrue. *Crescent City Live Stock Co.* v.
*Butchers' Union Slaughter House Co.*, 120 U. S. 141;
Cooley's Const. Lim. 528; Sutherland on Stat. Const.,
§ 480; *Lewis* v. *Penna. R. R. Co.*, 220 Pa. St. 317; Potter's
Dwarris, 167; *McMullen* v. *Hoffman*, 174 U. S. 654.

The curative act of 1907 does not change the facts upon
which the opinion of the Federal court was reached.

The legislature cannot, and has no power to, alter the
character of the acts of the parties at the time this con-
tract was entered into. To concede such a power would
be to give to it a greater control over the judgments of the
Federal courts than is given to the highest appellate
courts of any State.

An appellate court must decide cases pending before it

in accordance with the existing laws, even though the law may not have been passed until after the judgment in the lower court was rendered. And it matters not that to give effect to the new law the appellate court must set-aside a judgment rightful when entered. *United States* v. *Schooner Peggy*, 1 Cranch, 103; *Dinsmore* v. *Southern Express Co.*, 183 U. S. 115, 120; *Day* v. *Day*, 22 Maryland, 530; *Simpson* v. *Stoddard Co.*, 173 Missouri, 423; *Pelt* v. *Payne*, 30 S. W. Rep. 426; *Sidway* v. *Lawson*, 58 Arkansas, 117.

The question of the effect of the act of 1907 was before the Circuit Court of Appeals, the act having been passed before its decision was handed down. Since the Court of Appeals has given no effect to this act, it has decided that the act of 1907 does not have the effect claimed for it by the defendant in error, to wit, the creating in the defendant in error of a new cause of action.

*Mr. Edwin W. Smith* and *Mr. Samuel McClay* for defendant in error and in support of the motion:

The decision of the Circuit Court was given full effect—the broadest possible. It was assumed by everybody upon the second trial that without the act of 1907 there could be no recovery on the contract—that the case had been adjudicated. The effect of the act of 1907 was not a Federal question: it was solely one for the state courts. The curative act of May 23, 1907, of the Pennsylvania legislature is constitutional. Cooley's Const. Lim., 7th ed., 535; *Mercer* v. *Watson*, 8 Pet. 876; *S. C.*, below, 1 Watts, 358; *Satterlee* v. *Matthewson*, 16 S. & R. 169; *Randall* v. *Krieger*, 23 Wall. 137, 150; and see *Gross* v. *Mortgage Co.*, 108 U. S. 477, 488; *Rosenplanter* v. *Provident Life Society*, 96 Fed. Rep. 721; *Hess* v. *Werts*, 4 S. & R. 356.

The judgment in the Circuit Court of the United States is *res judicata* only of the issues then presented, of the facts as they appeared, and of the legislation existing at

the rendition of the judgment in the court below.  *Utter*
v. *Franklin*, 172 U. S. 417; and see also *Barnet* v. *Barnet*,
15 S. & R. 71; *Mercer* v. *Watson*, 1 Watts, 356; *Land Co.* v.
*Weidner*, 169 Pa. St. 364.

MR. JUSTICE McKENNA delivered the opinion of the
court.

This is the second action between the parties, defend-
ant in error being plaintiff in both, and the purpose of
both being the recovery of $332,750.98 upon an award of
James H. McRoberts, chief engineer of the railroad com-
pany, made under the circumstances hereinafter detailed.
In the present action the declaration contains a count
upon a *quantum meruit*.

The first action was brought in the United States Circuit
Court for the Western District of Pennsylvania.  A ver-
dict was directed for the plaintiff (defendant in error here)
for the full amount of the award, subject to the court's
decision upon a point reserved.  Subsequently judgment
*non obstante* was entered for the defendant (plaintiff in
error here).  One of the grounds of the motion, and, as it
was the only one considered, it is not necessary to give
the others, was that the action could not be maintained
because the plaintiff (defendant in error here) being a
foreign corporation (it was incorporated under the laws
of West Virginia) did not register as required by the
statutes of Pennsylvania, before making the contract on
which the action was based.

An act passed in 1874 provided that no foreign corpora-
tion should do business in the State until it had estab-
lished an office or offices and appointed an agent or agents
for the transaction of business therein.  And it was made
unlawful for such corporation to do any business until it
had filed in the office of the secretary of the Common-
wealth a statement, under seal, signed by the president
and secretary, showing the title and object of the corpora-

tion, the location of its offices, and the names of its agents. A certificate of the secretary of the Commonwealth of such filing was required to be kept for public inspection in every office. Transacting business without complying with the provisions of the act was made a misdemeanor.

An act was passed in 1889 which provided that any limited partnership, bank or joint stock association organized under the laws of the Commonwealth, or under the laws of any other State and doing business in the Commonwealth, should register, in the office of the auditor general, the place of its business and post office address, the names of certain of its officers, and the amount of capital authorized and the amount paid. Such registration was also required of every corporation then engaged in business in the Commonwealth. Annual registration was required thereafter. A penalty of $500 was imposed for violations of the act.

The plaintiff had not registered at the time the contract involved in the action was made. It, however, subsequently registered.

It was held, following the decisions of the courts of Pennsylvania, that the statutes made unlawful business transactions within the State by a foreign corporation which had not complied with their provisions. And it was said:

"Nor does the award of the engineer have any efficacy in this case. Authority on his part to act, and the obligation of parties to abide by his decision, rests in both cases on the provisions of the contract which is *contra legem*. The law will not enforce an award which is on an illegal contract. *Benton* v. *Singleton*, 114 Alabama, 556."

The opinion concluded as follows:

"Upon the whole, therefore, we are of the opinion that by reason of the non-registration of the plaintiff corporation prior to the contract here involved, the verdict for plaintiff cannot be sustained. Judgment will

therefore be entered in favor of the defendant *non ob-stante veredicto*, but said judgment shall not bar any sub-sequent suit or proceeding by the plaintiff for services performed."

The Circuit Court of Appeals, to which the case was carried, also expressed the view, applying, as it said, the decisions of the courts of the State, that the contract was illegal and its illegality made void the award made under it. The judgment of the Circuit Court was affirmed.

Then an act of the legislature of Pennsylvania was passed, entitled "An act validating contracts, bonds or ob-ligations made by corporations of other States, without first having established known places of business and des-ignating authorized agents for the transaction of their busi-ness within this Commonwealth, and providing for the en-forcement of the same." P. L. 205.

Thereupon this action was brought not only upon the award made by James H. Roberts, but also for work and labor done as upon a *quantum meruit*. Among other de-fenses the judgment in the United States Circuit Court was pleaded as a bar to the action, notwithstanding the act of May 23, 1907. The trial court was of opinion that the act "cured the defect in plaintiff's contract," and accordingly the judgment was not a bar to the action. The court also ruled against the other defenses, and entered judgment for plaintiff (defendant in error here). It was sustained by the Supreme Court of the State, on the ground that the adjudication in the Circuit Court "settled nothing with respect to the merits of this case; all that was there adjudicated was the plaintiff's right to maintain its action as an unregistered foreign corporation." The Supreme Court further decided that "the effect of the act of May 23, 1907, was to remove the impediment created by the prior act to the enforcement of the contract, and the plaintiff had at once acquired the right to main-tain an action thereon."

The action of the state court deciding against the judgment of the United States Circuit Court as a bar constitutes the Federal question in the case, the contention of plaintiff in error being that due faith and credit were denied the judgment. A motion, however, is made to dismiss the writ of error on the ground that no Federal question is presented by the record or alternatively to affirm the judgment.

The motion to dismiss is based on the contention that the judgment of the Circuit Court reserved to plaintiff a right of action for the services performed and that the Supreme Court of the State having decided that the present action was within the reservation, it gave, not denied, the same faith and credit it would have given to a state judgment rendered under similar circumstances.

When a party asserts that due faith and credit have not been given to a judgment rendered in an action between him and the other party he asserts a right under the Constitution of the United States, and necessarily this raises a Federal question. This is the assertion in the present case, and the consideration which the Supreme Court of Pennsylvania gave it demonstrates that it is not so far frivolous as to sustain a motion to dismiss. The motion is, therefore, denied. On the other hand, we cannot say that the motion to dismiss is without color, and pass, therefore, to the merits for the determination of which a fuller statement of the facts becomes necessary.

The West Side Belt Railroad Company, which we shall refer to as the railroad company, entered into a contract with one Petrie to construct an extension of its road. Petrie engaged to construct and complete the proposed work in the manner and within the time called for by the specifications, and the railroad company agreed to pay for the work the sum of $400,000. The contract was dated April 25, 1901. On the twenty-fourth of May following, Petrie, with the consent of the railroad company, entered

into a contract with the Pittsburgh Construction Company, referred to herein as the construction company, to do the work. This contract was a transcript of the contract between Petrie and the railroad company, except as to the consideration. Following the signatures of the parties this appears: "For value received, the Westside Belt Company and John S. Scully and T. S. Barnsdall do hereby guarantee and become surety for the payment of the money mentioned in this contract as the same becomes due and payable."

Under the contract James H. McRoberts was made the final arbitrator to determine all matters in dispute, and disputes arose which were submitted to him. He after full hearing made an award in favor of the construction company in the sum of $332,750.98.

The construction company brought the action to which we have referred in the Circuit Court of the United States against the railroad company, Scully and Barnsdall, on their contract of guaranty for the amount of the award. The proceedings in the Circuit Court and its judgment and that of the Circuit Court of Appeals have been stated.

An act of May 23, 1907, mentioned above, provided that contracts made by foreign corporations should be binding, and might be enforced in the courts of the Commonwealth, provided the corporation had subsequently and prior to the passage of the act complied with the laws of the Commonwealth by establishing a known place of business in the State and designating authorized agents for the transaction of its business, and before commencing any suit upon such contract, bond, or obligation and had paid all taxes that would have accrued to the Commonwealth if it had complied with the laws at the time of beginning business.

After the passage of the act this action was brought. The declaration contained two counts, one for the recovery of the sum of $332,750.98, with interest, for services per-

formed and materials furnished, conclusively evidenced by the award of James H. McRoberts, and the other upon a *quantum meruit* for the value of the work done and materials furnished, as of the date of the performing and furnishing the same. Judgment was rendered for the construction company, as we have stated.

The decision in this case turns upon a comparison of the two actions, and the effect of the act of May 23, 1907.

It was assumed by the trial court, and also by the Supreme Court, that the action in the Circuit Court was between the same parties and upon the same cause of action as this one. Making that assumption, the trial court said the question was, Did the act of May 23 "revitalize the contract, which the United States court declared invalid?" And, construing the statute, decided that it was its intention to legalize every contract, bond or obligation of a foreign corporation which had not complied with the laws of the State, but subsequently had done so and paid all of the taxes which would have accrued. "The act makes no distinction," the court said, "between contracts which have been litigated and those which have not been litigated," and as it was found that the plaintiff (defendant in error) had complied with all the requirements of the statute, it was held that the defect in the contract was cured and the judgment of the Circuit Court was no bar to recovery. The Supreme Court pronounced the ruling correct, and, we may assume, approved the grounds upon which it was based. It is true the learned court discussed the judgment more than it did the act of May 23; but this, we infer, was for the purpose of showing that the judgment in the Circuit Court was rendered, not upon the controversies which arose between the parties in consequence of the contract, its terms, the extent or manner of its performance or the liability of the railroad company upon its contract of guaranty, but "was based," as the court said, "exclusively on the

plaintiff's disability to maintain the action because of its
failure to register within the State before the contract
sued upon was entered into," and that, therefore, the
judgment did not preclude a consideration of the act of
May 23 or take from it the power to "revitalize" the
contract. We agree, therefore, with the railroad company
that the effect of the act of May 23 constitutes "the real
and only issue in the case."

That the action could be maintained without it is not
contended. It is true that the declaration contained a
count upon a *quantum meruit,* in order to bring the case
within the reservation of the judgment of the Circuit
Court, but evidence to sustain it was ruled out upon the
objection of plaintiff in error, on the ground substantially
that the contract furnished its own measure of damages,
"ascertained in the manner set forth" in the contract,
that is, by an appraisement and award, and that the evi-
dence offered was a "contradiction of the written con-
tracts in the case," and therefore incompetent. The
*quantum meruit,* therefore, is out of the case, and the action
rests on the contract, as the action in the Circuit Court
did, and the judgment in the latter, adjudging its invalid-
ity, is a bar to the present action, unless such effect has
been taken from it by the act of May 23, 1907. And this
is admitted. Indeed, defendant in error asserts that it
was assumed by everybody at the trial, but it is insisted
that the effect of the act is not a Federal question, but
solely one for the state courts. In this we cannot concur.
It is an element in the consideration of the question
whether due faith and credit were given to the judgment
of the Circuit Court, and we are brought to the considera-
tion of the curative effect of the act.

In *Walson* v. *Mercer,* 8 Pet. 88, such an act was sus-
tained against a charge that it divested vested rights and
impaired the obligation of a contract. The act considered
made valid the deeds of married women which were invalid

by reason of defective acknowledgments, and avoided a judgment in ejectment rendered against one of the parties to the action because of such a defect in a deed relied on for title. The controversy was between the successor by descent of the married woman and the grantee in the deed.. It was said in the argument that the descents had been confirmed by two judgments of the Supreme Court of the State against the deed, adjudicating it to be void on points involving its validity, which judgments, it was contended, were conclusive evidence that the deed was no deed, and that the rights acquired by descent were absolute vested rights. The act was nevertheless sustained, as we have stated.

*Satterlee* v. *Matthewson*, 2 Pet. 380, is to the same effect. Title was set up as a defense in an action of ejectment to which the plaintiff replied that, conceding it to be older and better than his, it nevertheless could not be set up against him as the defendant was his tenant. The trial court took that view and the Supreme Court of the State reversed it on the ground that by the statute law of the State the relation of landlord and tenant could not subsist under a Connecticut title. Before the second trial of the case the legislature of the State (Pennsylvania) passed a law providing that the relation of landlord and tenant should exist under such titles. This court affirmed the judgment of the Supreme Court of the State sustaining the law.

The doctrine of *Satterlee* v. *Matthewson* and *Walson* v. *Mercer* was repeated in *Randall* v. *Kreiger*, 23 Wall. 137, 150.

In *Gross* v. *United States Mortgage Company*, 108 U. S. 477, the same principles were applied to sustain an act of the State of Illinois making valid a mortgage which was inoperative under the provisions of prior laws. So also *Ewell* v. *Daggs*, 108 U. S. 143.

In *Utter* v. *Franklin*, 172 U. S. 416, it was decided that

an act of Congress validating a defect in bonds of the Territory of Arizona was within the power of Congress.

The principle of the cases is declared to be by Mr. Justice Matthews, in *Ewell* v. *Daggs, supra,* "that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation, and that whatever the statute gives, under such circumstances, as long as it remains *in fieri,* and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy and forms no element in the rights that inhere in the contract." And such view of curative statutes is entertained by the Supreme Court of Pennsylvania, as indicated by its opinion in the present case and the cases there cited.

The Federal question having been correctly decided, the judgment is                                        *Affirmed.*