## NORTH AMERICAN CREAMERY CO. v. WILLCUTS, Internal Revenue Collector.

District Court, D. Minnesota, Third Division. Feb. 21, 1930.

Junell, Oakley, Driscoll & Fletcher, of Minneapolis, Minn., for plaintiff.

L. L. Drill, U. S. Atty., of St. Paul, Minn., and M. W. Goldsworthy, C. H. Charest, Lester L. Gibson, and Ralph E. Smith, all of Washington, D. C., for defendant.

MOLYNEAUX, District Judge.

Trial by jury was duly waived by written agreement of the parties duly filed with the clerk of this court, and the case was tried to the court on the 18th day of November, 1929.

Findings of Fact.

I find the following facts:

(1) North American Creamery Company is, and at all times hereinafter mentioned was, a corporation duly organized and existing under the laws of the state of Minnesota, doing business as a creamery company, and having its office and principal place of business at Paynesville, Minn.

(2) The defendant was in the year 1921, and ever since that time has been, the duly appointed, qualified, and acting collector of internal revenue for the district of Minnesota.

(3) On March 17, 1919, plaintiff filed its tentative return and estimate of corporation income and profits taxes and request for extension of time for filing return, with the collector of internal revenue of the United States for the district of Minnesota. That thereafter and on June 14, 1919, plaintiff filed in the office of the collector of internal revenue for the district of Minnesota its corporation income and profits tax return for the calendar year ended December 31, 1918, from which it appeared that plaintiff's tax liability was $160,308.63, which amount was assessed by the Commissioner of Internal Revenue on August 23, 1919. Payments were made as follows: March 17, 1919, $42,000; June 10, 1919, $38,154.32; September 13, 1919, $40,077.16; December 13, 1919, $21,923.11.

(4) On December 15, 1919, instead of paying the balance of taxes due, plaintiff filed a claim for an abatement thereof in the sum of $18,154.04. The claim was rejected on January 23, 1924. Thereafter, on February 12, 1924, plaintiff executed an income and profits tax waiver and filed same with the collector of internal revenue and the Commissioner of Internal Revenue; a copy of said waiver being attached to the plaintiff's complaint. By the terms of said waiver the assessment and collection of plaintiff's income and excess profits tax for the year 1918 was extended for a period of one year after the expiration of the statutory period of limitation or statutory period of limitation as extended by any waivers then on file with the Bureau of Internal Revenue. The statutory period of limitation upon collection of said liability as so extended expired June 14, 1925.

(5) On or about April 3, 1924, plaintiff filed with the Commissioner of Internal Revenue its protest against and appeal from the ruling of the Commissioner of Internal Revenue rejecting plaintiff's claim in abate-

ment as contained in the letter of January 23, 1924 (Defendant's Exhibit 1). On May 7, 1924, plaintiff filed with the collector of internal revenue its claim for the abatement of its 1918 taxes in the sum of $22,191.81 (Defendant's Exhibit 2); this claim in abatement was rejected by the Commissioner of Internal Revenue in a letter dated August 7, 1925 (Defendant's Exhibit 3). On August 11, 1925, the defendant made demand upon plaintiff for the payment of the balance of the tax, $18,154.04, together with interest thereon in the sum of $5,515.15. On August 21, 1925, pursuant to said notice and demand and under protest, plaintiff paid said amount in the total sum of $23,669.19.

(6) At the trial of the action a representative of the collector's office testified that it was the custom in the office of the collector of internal revenue, when a claim in abatement was filed, to stay the collection of the tax until the claim was either accepted or rejected by the Commissioner of Internal Revenue at Washington.

This testimony was admitted by the court subject to the objections of plaintiff that the same was immaterial, incompetent, and irrelevant. I now overrule the objection and allow the plaintiff an exception to the ruling.

I find that the custom did exist in the office of the internal revenue collector as testified to by the witness.

The same witness also testified that the collector did, following the filing of the claim, withhold collection until the claim was rejected. I find this testimony to be true.

(7) On February 18, 1927, North American Creamery Company duly filed a claim for the refund of $23,699.19, asserting therein as a ground for the recovery of said amount that collection had been effected after collection was barred by the statute of limitations, and that therefore the collection was illegal, wrongful, and erroneous. The Commissioner of Internal Revenue of the United States and the defendant collector have never advised plaintiff of their decision with respect to said claim. On or about September 22, 1927, North American Creamery Company commenced the above-entitled action in the United States District Court in and for the District of Minnesota, Third Division, to recover $23,699.19, the amount claimed to have been illegally collected as aforesaid.

### Conclusions of Law.

As conclusions of law, I hold that the plaintiff is not entitled to recover of defendant in the sum of $23,699.19, or any part thereof, and that defendant is entitled to recover from the plaintiff its costs and disbursements herein.

Let judgment be so entered.

### Opinion.

A cardinal rule of construction is that an ambiguous statute may be viewed in the light of the conditions and circumstances surrounding its enactment, in order to obtain the viewpoint of the Legislature and to understand its intention. The uncertainty in section 611 arising out of the use of the word "stayed" renders the testimony as to the custom which prevailed in the office of the collector of internal revenue material to the issue here, and for that reason the testimony is admitted.

This controversy arises out of an ambiguity in section 611 of the Revenue Act of 1928, 45 Stat. 875 (26 USCA § 2611). Section 611 should be construed in connection with section 607 of the same Act (26 USCA § 2607).

The following is a copy of the two sections:

"§ 2611. *Collections Stayed by Claim in Abatement.*

"If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after May 29, 1928) shall not be considered as an overpayment under the provisions of section 2607, relating to payments made after the expiration of the period of limitation on assessment and collection."

"§ 2607. *Effect of Expiration of Period of Limitation against United States.*

"Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after May 29, 1928) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

The plaintiff sues to recover from the internal revenue collector for the district of

Minnesota the sum of $23,699.19, a portion of the plaintiff's income taxes for the calendar year 1918, which was collected by the defendant after collection thereof was barred by the running of the applicable statute of limitation. The plaintiff protested the payment, and the tax was paid under duress.

It is necessarily conceded by the defendant that the collection was illegal, and, but for section 611, the tax so paid would be considered an overpayment within the terms of section 607, and the plaintiff therefore would be entitled to recover from the defendant pursuant to the holding of the case of Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, and Russell v. U. S., 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255.

Sections 607 and 611 (26 USCA §§ 2607, 2611) were enacted by Congress after the foregoing decisions were made.

From the facts adduced at the trial it appears that there was an internal revenue tax; that the tax was assessed prior to June 2, 1924, and within the period of limitation properly applicable thereto. Claims for abatement of the tax were duly filed. In all of these respects the conditions of section 611 (26 USCA § 2611) are met.

The sole remaining requisite to bring this case within the purview of section 611 (26 USCA § 2611) is with respect to a stay.

The undisputed facts are that on December 15, 1919, instead of paying the balance of taxes due, plaintiff filed a claim for abatement thereof; that the claim was rejected on January 23, 1924; that on April 3, 1924, plaintiff filed a protest and appeal from the ruling of the Commissioner, rejecting its claim in abatement, in a letter dated January 23, 1924; that on May 7, 1924, plaintiff filed with the collector of internal revenue a second claim for abatement, which was rejected, in a letter dated August 7, 1925; that on August 11, 1925, the defendant made demand on plaintiff for the balance of the tax, and on August 21, 1925, plaintiff paid said amount in full.

No effort was made by the defendant collector to collect the tax pending a final decision of the claim in abatement, but, on the contrary, collection of the claim was delayed or stayed according to the custom of the office until the final decision rejecting the claim.

The questions presented for decision here are: (1) Is section 611 of the Revenue Act of 1928 applicable to the facts in this case? And, if so, (2). Is section 611 constitutional?

[3, 4] 1. Whether or not section 611 is applicable depends upon the construction to be placed upon the word "stayed" as used in the section.

If the word "stayed" is properly construed to have been used by Congress to imply a legal or compulsory stay, then the section is not applicable and the tax paid is not an "overpayment" within the terms of sections 607 and 611 (26 USCA §§ 2607, 2611), for in the present case there was no legal or compulsory stay of the collection of the tax.

The decisions upon this question are in conflict; some holding that Congress intended to use "stayed" in the sense of a legal or compulsory stay, others holding that the word was used in its broader sense and covers both a legal and a voluntary stay.

The cases cited pro and con are Goodcell v. Graham (C. C. A.) 35 F.(2d) 586; Huntley v. Gile (C. C. A.) 32 F.(2d) 857; Regla Coal Co. v. Bowers et al. (U. S. D. C. So. Dist. N. Y.) 37 F.(2d) 373, opinion filed November 13, 1929 (page 8888 Standard Fed. Tax. Service); Oak Worsted Mills v. U. S. (Ct. Cl. of U. S.) 36 F.(2d) 529, decision filed December 2, 1929; Wright & Taylor, Inc. v. Robert H. Lucas, Collector (D. C.) 34 F.(2d) 328—holding section 611 applicable. Contra, United States v. Burden, Smith & Co. (C. C. A.) 33 F.(2d) 229; Erie Coal & Coke Co. v. Heiner (D. C.) 33 F.(2d) 135; Clinton Iron & Steel Co. v. D. B. Heiner, Collector (D. C.) 30 F.(2d) 542; Franklin W. Cutcheon v. John T. Rafferty, Collector (U. S. Dist. Ct. Eastern Dist. N. Y. Law No. 3054), 34 F.(2d) 708, opinion filed July 15, 1929 (St. Fed. Tax. Ser. p. 8685); Pepsin Syrup Co. v. Schwaner, Collector (Dist. Ct. U. S. So. Dist. Ill. So. Div. Law No. 17920) 35 F.(2d) 197, decision filed July 20, 1929 (St. Fed. Tax. Ser. p. 8689).

As before stated, the enactment should be viewed in the light of the conditions surrounding its enactment.

There existed in the office of the collector of internal revenue at the time of the enactment, a custom under which, where a claim in abatement was filed, collection of the tax was voluntarily stayed until the matter was passed upon by the Commissioner of Internal Revnue. This stay, of course, was voluntary, and could be violated by the collector at will.

There was no way in which a legal stay could be had except that the Revenue Act

of 1918, par. 14, § 234 (40 Stat. 1079), authorized the taxpayer at the time of filing his return to file a claim in abatement, and further provided that payment should not be required until such claim was passed upon; but the taxpayer in that case was required to file a proper bond. This section is the only section of any of the prior Revenue Acts which falls within the specific terms of section 611 in the Act of 1928 (26 USCA § 2611), and could only involve a small number of claims. It is the only instance in which a legal stay could exist staying the collection.

It must be assumed that Congress was familiar with these conditions.

By the express terms of the act, the provision as to a stay covers cases where a claim in abatement was filed "with or without bond," and was therefore intended to cover cases where there was no legal stay. It is not and cannot be contended that any court or other authority had power to impose a stay upon the collection of the tax.

The contention that Congress intended to deny recovery only in cases covered by the Revenue Act of 1918, par. 14, § 234, above referred to, where a bond is required, fails to take into consideration the fact that the act expressly covers cases where the claim in abatement is filed without bond, and, as stated in Goodcell v. U. S. supra, the plaintiff is unable to point out any provision which would operate as a compulsory stay where no bond is filed with the claim in abatement.

Congress did not qualify the word "stayed," and there is no reason why the court should qualify it. A reading of the section and the circumstances surrounding its enactment require the conclusion that Congress had in mind, in using the word "stayed," not only a legal stay, but also a voluntary stay, which it was the practice in the office of the internal revenue collector to impose, in justice to the taxpayer, in order that he might have his claim considered and decided before paying the tax. To hold otherwise would render the words "without bond" ineffective and meaningless, and would be in violation of a cardinal rule in the construction of statutes, that effect is to be given, if possible, to every word, clause, and sentence. Pillsbury Flour Mills Co. v. Great Northern Ry. Co. (C. C. A.) 25 F.(2d) 66 (69); 36 Cyc. 1128; U. S. v. Ninety-Nine Diamonds (C. C. A. 8) 139 F. 961, 2 L. R. A. (N. S.) 185; U. S. ex rel. Harris v. Daniels (C. C. A.) 279 F. 844; Hellmich v. Hellman (C. C. A. 8) 18 F.(2d) 239.

That this was the view of Congress is perfectly apparent from the report of the Ways and Means Committee in reporting the bill to the house, which was as follows:

"Prior to the enactment of the Revenue Act of 1924 it was the administrative practice to assess immediately additional taxes determined to be due. Upon the assessment, taxpayers were frequently permitted to file claims in abatement with the collector and thus delay the collection until the claim in abatement could be acted upon. If this practice had not been followed, undue hardship undoubtedly would have been imposed upon the taxpayer. It was supposed that there was no limitation upon the collection by distraint of the amount ultimately determined to be due. However, the Supreme Court has recently held in a case in which the period for assessment expired prior to the enactment of the 1924 Act, that the period of collection was limited to five years from the date on which the return was filed. Decisions upon claims in abatement are being made every day. Amounts have been paid, are being paid, by the taxpayer even though the statute of limitations may have run. Exceptionally large amounts are involved. Accordingly, it is of utmost importance to provide that the payments already made should not be refunded. In order to prevent inequality, it is also provided that the amounts not yet paid may be collected within a year after the enactment of the new Act.

"Your committee appreciates the fact that this provision will probably be subjected to severe criticism by some of the taxpayers affected. However, it must be borne in mind that the provision authorizes the retention and collection only of amounts properly due, and merely withdraws the defense of the statute of limitations. If it is determined that the amount paid is in excess of the proper tax liability, computed without regard to the statute of limitations, such excess will constitute an overpayment which may be refunded or credited as in the case of any other overpayment." H. R. Rep. No. 2, 70th Cong. 1st Sess. p. 34. See, also, Sen. Rep. No. 960, 70 Cong. 1st Sess. p. 42.

I hold, therefore, that this case comes within the purview of section 611 (26 USCA § 2611).

2. It is further contended that section 611, construed to be applicable to the facts in this case, is unconstitutional because upon the collection of the tax in question plaintiff became vested with a valid and subsisting

right of action against the defendant, and that such right of action is a property right.

The justness of the tax in question is not disputed; nor is the legality of the tax in any way disputed except for the running of the statute of limitation.

Statutes of limitation are founded in public needs and public policy—are arbitrary enactments by the lawmaking power. Such benefits are conferred by sovereign grace, and may be withdrawn at any time by the lawmaking power.

No vested right accrues to a taxpayer out of the running of the period of limitation for the collection of a valid tax. Goodcell v. Graham (C. C. A.) 35 F.(2d) 586; Huntley v. Gile (C. C. A.) 32 F.(2d) 857; Regla Coal Co. v. Bowers et al. (U. S. D. C. So. Dist. N. Y.) 37 F.(2d) 373, opinion filed November 13, 1929 (page 8888, Standard Fed. Tax. Service); Oak Worsted Mills v. U. S. (Court of Claims of U. S.) 36 F.(2d) 529, decision filed December 2, 1929; Wright & Taylor, Inc., v. Robert H. Lucas, Collector (D. C.) 34 F.(2d) 328, 332; Rafferty v. Smith, Bell & Co., 257 U. S. 226, 42 S. Ct. 71, 66 L. Ed. 208; United States v. Heinszen, 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; Collector v. Hubbard, 79 U. S. (12 Wall.) 1, 20 L. Ed. 272; Haight v. U. S. (C. C. A.) 22 F.(2d) 367; Campbell v. Holt, 115 U. S. 620, 6 S. Ct. 209, 29 L. Ed. 483; South & N. A. R. Co. v. Alabama, 101 U. S. 832, 25 L. Ed. 973; Beers v. Arkansas, 61 U. S. (20 How.) 527, 15 L. Ed. 991; West Side Belt R. Co. v. Pittsburgh Const. Co., 219 U. S. 92, 31 S. Ct. 196, 55 L. Ed. 107; Brushaber v. Union Pac. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414; Ann. Cas. 1917B, 713; Lynch v. Hornby, 247 U. S. 339, 343, 38 S. Ct. 543, 62 L. Ed. 1149.

3. Finally it is urged by the plaintiff that section 611 is not applicable, because plaintiff's cause of action is against the receiver personally for money had and received (Sage v. U. S., 250 U. S. 33, 39 S. Ct. 415, 63 L. Ed. 828; Smietanka v. Indiana Steel Co., 257 U. S. 1, 42 S. Ct. 1, 66 L. Ed. 99; International Paper Co. v. Burrill (D. C.) 260 F. 664), and is not an action against the United States for the recovery of internal revenue paid to the government.

Plaintiff's cause of action against the collector arose out of the illegal act of the defendant collector in collecting a tax barred by the running of the statute of limitations. It was the purpose of section 611 (26 USCA § 2611) to ratify and legalize illegal collections made under the conditions that this collection was made and to deny the taxpayer the right to recover the tax so paid to the government.

By thus legalizing the act of the defendant collector in making the collection, the plaintiff's right of action was destroyed.

I agree with the statement made by Judge Dawson in Wright & Taylor v. Lucas, Collector, supra:

"When he collected the tax, the collector was required by law to immediately pay same into the Treasury. He had no right to retain the money pending the outcome of threatened litigation over the collection. The government has had the benefit of the collection. Yet, if the plaintiff's theory is correct, Congress intentionally left collectors open to suit and judgment in such cases as the one at bar but denied them the right of reimbursement for any judgments thus obtained. It seems to me that the mere suggestion of the result of such a construction forces us to reject it.

"I must therefore conclude that section 611 was intended by Congress to take away from those taxpayers who had filed claims in abatement of assessments made prior to June 2, 1924, and who had, as the result of filing such claims, secured a postponement of payment pending decision on the claims, and who had been forced after the running of limitation to pay the tax thus assessed, the right to rely upon the fact that collection had been forced after the running of limitation as a basis for recovering a refund, whether the suit for such recovery is against the collector who made same or directly against the United States."

My conclusion is that the plaintiff is not entitled to recover.