NATIONAL CARLOADING CORPORATION
v. PHŒNIX–EL PASO EXPRESS, Inc.
No. 4237.

Court of Civil Appeals of Texas. El Paso.
April 1, 1943.

Rehearing Denied April 22, 1943.

134

Paul J. Coughlin, of New York City, Robert E. Quirk, of Washington, D. C., and Jones, Hardie, Grambling & Howell, of El Paso, for appellant.

Robert L. Holliday and Harold L. Sims, both of El Paso, for appellee.

McGILL, Commissioner.

In Acme Fast Freight, Inc., v. United States, D.C., 30 F.Supp. 968, affirmed in 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993, it was held that freight forwarders conducting businesses similar to appellant's were not common carriers by motor vehicle within the purview of the Motor Carrier Act of 1935, 49 U.S.C.A. §§ 301–327, and were not entitled to a certificate of public convenience and necessity under the so-called "grandfather" clause of Sec. 206(a), 49 U.S.C.A. § 306(a), or to establish and share in joint rates with common carriers by motor vehicle within the meaning of the Act under Sec. 216(c), 49 U.S.C.A. § 316(c). On January 4, 1940, the Interstate Commerce Commission found that appellant was neither a common carrier by motor vehicle nor a contract carrier under the provisions of the Act, and denied its application for a certificate of public convenience and necessity. On May 7, 1940, the Commission determined that the operations of appellant and its tariffs of so-called joint rates with motor carriers filed with the Commission were in all essential respects similar to those of the Acme, and ordered such tariffs stricken from its files. The effective date of this order was thereafter suspended from time to time by the Commission, and finally, by order of June 1, 1942, it was suspended until further order of the Commission.

This suit was instituted by appellee to recover from appellant $1,045 as under charges on nine shipments of freight alleged to have been transported from El Paso, Texas to Phoenix, Arizona, between July 28, 1937, and November 7, 1937, both dates inclusive, by Charles G. Schnaibel and E. C. Donahue, a co-partnership doing business as the Phoenix-El Paso Express. It was alleged that the cause of action had been assigned to appellee. Upon answers to special issues by a jury, the court rendered judgment in favor of appellee against appellant for $999.68, with interest and costs.

At time of the shipments the partnership of Schnaibel and Donahue was a common carrier by motor vehicle in interstate commerce, operating under a certificate of public convenience and necessity issued to it by the Interstate Commerce Commission. It had adopted Arizona Motor Transport Association Tariff No. 1, M.F.-I.C.C. No. 1 of H. M. Suter, Agent (Earl K. Cone Series), and Supplements thereto, on file with the Commission, as its established and published tariffs, and these were held to be applicable to such shipments. It had filed with the Commission concurrences in the joint tariffs of appellant then on file with the Commission, and had billed appellant for and received, as compensation for its services for transporting the shipments in question, a portion of appellant's joint rates equal to 45¢ per hundred pounds. Under the Arizona Motor Transport Association Tariff No. 1 the legal rate for this service was 85¢ per hundred pounds. Each shipment was made under a straight bill of lading or shipping order issued by appellant which stipulated that the property was "received subject to classifications and tariffs in effect" on the date of its issue. All of the shipments originated at points north and east of El Paso and came into Texas from other states.

The jury found that each of the shipments had been transported from El Paso to Phoenix by the partnership of Schnaibel and Donahue, doing business as the Phoenix-El Paso Express, and the amount that should have been charged therefor according to Arizona Motor Transport Association Tariff No. 1 and the difference between these sums and the amount received by appellee is the basis for the judgment.

Prior to October 1, 1935, the effective date of the Motor Carrier Act of 1935, appellant had established joint tariffs naming through routes and joint rates with a large number of motor carriers, including appellee's predecessors. These tariffs were issued in the name of appellant and provided for the movement of less than truckload shipments between points on the routes of various motor carriers, including appellee's predecessors, and other points served by appellant. Arrangements were also made between appellant and such motor carriers, including appellee's predecessors, for divisions of the revenues accruing from the joint rates. These were the tariffs which appellant published and filed with the Commission in an attempt to retain, during the pendency of its application for a certificate of public convenience and necessity, the benefits of the status previously enjoyed, in accordance with Sec. 217 of the Act, 49 U.S.C.A. § 317. Under the "grandfather" clause, Sec. 206 (a), 49 U.S.C.A. § 306(a), it is specially provided that "pending the determination of any *such* application the continuance of such operation shall be lawful." Sec. 209 (a), 49 U.S.C.A. § 309(a), contains substantially the same language.

Notwithstanding the decision in Acme Fast Freight, Inc., v. United States, supra, appellant contends that because of its previous status and these statutory provisions, its operations were lawful during the pendency of its application for a certificate of public convenience and necessity and that its tariffs were the tariffs *in effect at the time* of the shipments under Sec. 217(b), 49 U.S.C.A. § 317(b), since they had not been stricken by the Commission and since the language of Sec. 217(a), 49 U.S.C.A. § 317(a), that "Any tariff so rejected by the Commission *shall be* void and its use *shall be* unlawful," (italics ours), and the provisions of Sec. 216(f), 49 U.S.C.A. § 316 (f), requiring the Commission to make retroactive adjustment of divisions of joint rates which it has found to be unjust, clearly indicate that Congress had in mind the distinction between the prospective and retroactive operation of a statute, and intended that a rejected tariff should be void and its use unlawful only from and after the date of its rejection. Appellant further contends that since it had agreed with appellee's predecessors for a division of its joint rates equal to 45¢ per 100 pounds as full compensation for their services, both

parties believing in good faith that its tariffs were legally on file, it is protected by such agreement and appellee is bound thereby. It is insisted that since the shipments from El Paso to Phoenix were parts of interstate shipments originating in Eastern States, the published joint tariff takes precedence over other rates and is the lawful tariff applicable to through shipments from the point of origin to the point of destination.

These contentions cannot be sustained. It is true that where a joint through rate is provided in a tariff published and filed with the Commission as provided by the Interstate Commerce Act, that rate takes precedence over other rates and is the lawful applicable rate. Baltimore & O. S. W. R. Co. v. Settle, 260 U.S. 166, 43 S.Ct. 28, 67 L.Ed. 189; Kanotex Refining Co. v. Atchison, T. & S. F. R. Co., 34 I.C.C. 271; and Id., 46 I.C.C. 495. It is also true that a schedule of rates contained in a tariff which is permitted or required to be filed with the Commission is conclusive upon the carrier and shipper so long as such tariff is permitted by the Commission to stand, although such rates may be held to have been unreasonable and discriminatory and reparation ordered. Keogh v. Chicago & N. W. R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183. But it is only a "common carrier by motor vehicle" subject to the provisions of the Act that is authorized to apply for a certificate under the "grandfather" clause of Sec. 206(a) and is required to file its tariffs under Sec. 217(a); and it is only a "contract carrier by motor vehicle" that is authorized to apply for a certificate under Sec. 209(a), 49 U.S.C.A. § 309(a). The Acme decision and the orders of the Commission have authoritatively determined that appellant did not fall within either of these terms at time of the shipments. The record does not show that appellee's predecessors, or any "common carrier by motor vehicle" subject to the provisions of the Act, had established and filed with the Commission any tariff providing for joint through rates from point of origin to point of destination covering the services performed by appellant. The "concurrences" filed by appellee's predecessors could not have such effect, since by Sec. 216(c), 49 U.S.C.A. § 316(c), they could only establish through routes and joint rates with other "common carriers." Therefore it is not shown that there was on

file with the Commission any tariff which would take precedence over Arizona Motor Transport Association No. 1, unless appellant's tariffs were in effect.

In Southern Pacific Co. v. United States, 272 U.S. 445, 47 S.Ct. 123, 124, 71 L.Ed. 343, 345, Mr. Justice Stone said: "The ordinary consequences that attend the filing of a schedule of rates with the Interstate Commerce Commission as demanded or permitted by statute (cf. Texas & P. R. Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011; Chicago & A. R. Co. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L. Ed. 1033, Ann.Cas.1914A, 501), cannot be invoked by the carrier merely because it lodged a special tariff with the commission without statutory authorization (Illinois C. R. Co. v. United States, 58 Ct.Cl. 182)." A fortiori, such "ordinary consequences" cannot be invoked by a shipper or other party because it "lodged with the Commission" a tariff which the statute did not authorize it to file. Nor could the bona fide agreement of the parties relieve appellee's predecessors from the duty imposed on common carriers by Sec. 217(b), 49 U.S. C.A. § 317(b), to collect the compensation specified in the legal tariffs or release appellant from implied statutory liability therefor. To hold otherwise would nullify the expressed prohibition of Sec. 217(b) against remittance by a carrier, directly or indirectly, of any portion of the specified rates, and defeat one of the primary purposes of the Act, i.e., to prevent discrimination.

But appellant further contends that if it be held that the agreement for division of its joint rates with appellee's predecessors were unlawful when made, such illegality has been removed by the recent enactment by Congress of Part IV of the Interstate Commerce Act, which provides for the regulation of freight forwarders; that, even in the absence of agreement, this legislation relieves appellant from liability for claims for undercharges on shipments which occurred prior to its enactment, even though such claims have been reduced to judgment. The Act referred to (Public Law No. 558, 77th Congress, 2nd Session) was approved May 16, 1942, 49 U.S.C.A. § 1001 et seq., and contains the following section:

"Liability for past acts and omissions

"Section 419. No person shall be subject to any punishment or liability under the provisions of this act on account of any act done or omitted to be done prior to the effective date of this part, in connection with the establishment, charging, collection, receipt, or payment of rates of freight forwarders, or joint rates on divisions between freight forwarders and common carriers by motor vehicle subject to this Act." 49 U.S. C.A. § 1019.

 While, as a general rule, it is not to be assumed that Congress intended by such legislation to defeat claims which had arisen under existing statutes or on which judgment had already been entered, as in this case (United States v. St. Louis, S. F. & T. R. Co., 270 U.S. 1, 46 S.Ct. 182, 70 L.Ed. 435), yet from the specific language of Sec. 419, as well as its purpose as reflected from Congressional Reports, we are forced to the conclusion that it was intended to have, and does have just such effect, if valid. The immunity granted extends specifically to liabilities arising "in connection with the establishment, charging, collection, receipt or payment of rates of freight forwarders, or joint rates or divisions between freight forwarders and common carriers by motor vehicle subject to this Act." It extends to "any act done or omitted to be done, prior to the effective date of this Part." We think it apparent from the language employed that Congress intended to leave the parties in the same position they were when the shipments were made, had their transactions at that time been lawful. This view is strengthened by a consideration of the purpose of the legislation as reflected by House Report No. 1172, 77th Congress, 1st Session. After stating that the Commission, recognizing the chaotic condition which would result if its orders in the Acme case became effective before Congress had an opportunity to enact appropriate legislation relating to freight forwarders, had postponed the effectiveness of such orders, the Report continues:

"Section 419. Liability for Past Acts and Omissions

"As has been previously explained in this report, freight forwarders and common carrier by motor vehicle subject to part II have been for a number of years operating under joint rates which, by reason of the decision of the Commission in the Acme case, and in the other freight forwarder cases, they probably had no authority to establish and observe, even though the Commission's orders in those cases have not yet become effective. As a result of this,

various persons may have subjected themselves to penalties and liabilities under Federal statutes, even though during the period of operation under such joint rates there may have been no deliberate intention to violate the law, and no way of knowing for certain whether they were violating the law. Freight forwarders may be liable on account of failure to pay the regular published tariff rates of common carriers by motor vehicle. Common carriers by motor vehicle may be subject to liability because of failure to collect from freight forwarders their regularly published local rates. It is possible that shippers may also technically be subject to liabilities.

\* \* \* \* \*

"The validity of this section, insofar as it relieves persons of liability to fines, penalties, and forfeitures running to the United States is beyond doubt, and insofar as it relieves persons of liability to individuals good authority exists for such action. The courts are generally agreed that rights of action based upon purely statutory grounds may be abolished by the legislature even after they have accrued (16 C.J.S., Constitutional Law, § 254; Ewell v. Daggs, 108 U.S. 143 [2 S.Ct. 408, 27 L.Ed. 682] (1883); Hazzard v. Alexander [6 W. W. Harr. 212], 36 Del. 212, 173 A. 517 (1934); Wilson v. Head, 184 Mass. 515, 69 N.E. 317 (1904); cf. Carson v. Gore-Meenan [D. C.], 229 F. 765, 767 (1916). The courts have been particularly uniform in reaching this conclusion where the right of action is in the nature of a claim by an individual for the recovery of a statutory fine, penalty, or forfeiture (Ewell v. Daggs, 108 U.S. 143 [2 S.Ct. 408, 27 L.Ed. 682] (1883); Lemon v. Los Angeles Terminal [R.] Co., 38 Cal.App. 2d 659, 102 P.2d 387 (1940); Anderson v. Byrnes, 122 Cal. 272, 54 P. 821 (1898); Denver & R. G. Ry. Co. v. Crawford, 11 Colo. 598, 19 P. 673, 674 (1888). The authority of Congress or a State legislature to validate voluntary transactions between parties which at the time they were entered into were by statute invalid or illegal has been upheld by the United States Supreme Court in several cases (West Side [Belt] R. [Co.] v. Pittsburgh Construction Co., 219 U.S. 92 [31 S.Ct. 196, 55 L.Ed. 107] (1910); McNair v. Knott, 302 U.S. 369, 372 [58 S.Ct. 245, 82 L.Ed. 307] (1937)."

There can be no doubt from this report, that the House Committee on Interstate and Foreign Commerce regarded an interpretation in accordance with our views essential to afford relief to both carriers and shippers from the hardships which would be imposed upon them because of the decision in the Acme case. While the view of a House Committee is of course not controlling in the interpretation of a statute, yet its views of the reasons for enactment of legislation are entitled to great respect, and such reasons should have some weight in arriving at a correct interpretation.

█ Appellee advances the proposition that the word "liability," as employed in Sec. 419, should be construed to refer to criminal liability in order to make certain that the word "punishment" should not be limited to confinement or imprisonment, but should include the monetary fines imposed by Sec. 222(a), (c), (d) and (g), of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 322(a), (c), (d) and (g); but the heading to Sec. 419, "Liability for past acts and omissions," as well as the plain language of Sec. 419 itself, will not tolerate any such construction; nor does Sec. 409 of Part IV compel the construction of Sec. 419 as contended for by appellee. Subsections (1), (2) and (3) of paragraph (a) of Sec. 409, 49 U.S.C.A. § 1009 (a) (1–3), provide that joint rates or charges and concurrences contained in tariffs of freight forwarders filed or offered for filing with the Commission or under which freight forwarders and common carriers by motor vehicle subject to Part II of the Act were actually operating on July 1, 1941, shall or may, under certain conditions, become effective without notice as of the date of enactment of Part IV. That Congress did not, in Sec. 409, validate any prior joint rate or concurrence between freight forwarders and common carriers by motor vehicle, but merely authorized their use after the effective date of Part IV, does not warrant an implication that by Sec. 419 it was intended that claims which had arisen under Sec. 217(b) of Part II should not be defeated or that voluntary agreements between such parties for a division of such joint rates should not be validated. The validation of such agreements could have the "ridiculous and absurd result" of preventing carriers from collecting any freight charges from freight forwarders for services rendered prior to the enactment of Part IV, since Sec. 419 makes no distinction between undercharges and charges under joint rates or concurrence agreements, as urged by

appellee, only if such agreements provided for free carriage.

█ Such construction of Sec. 419, it is asserted, renders it invalid as violative of those provisions of Amendment V to the Constitution of the United States which prohibit deprivation of property without due process of law or the taking of private property for public use without just compensation. In the absence of contractual relations, appellee's cause of action is created by Sec. 217(b) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 317(b). It grows out of a necessary corollary of the duty imposed upon carriers by that section to collect the charges prescribed by law. It is entirely of statutory origin. The expressed duty to collect is imposed, and the obligation to pay is implied, not primarily for the carrier's benefit, but to prohibit unjust discrimination between shippers. Where Congress has created such causes of action, they may be taken away at any time, even after they have accrued, by subsequent statute. 16 C.J.S. Constitutional Law, p. 675, § 254; West Side Belt R. Co. v. Pittsburgh Construction Co., 219 U.S. 92, 31 S.Ct. 196, 55 L.Ed. 107.

█ Appellee can derive no comfort because of contractual rights. If, as claimed, the contract evidenced by the bills of lading or shipping orders required payment of the legal tariff, that contract was interpreted by both parties to apply to appellant's tariff, and such interpretation was acquiesced in by appellee by its acceptance of a portion of appellant's rates equal to 45¢ per 100 pounds. Such acceptance was a contractual agreement to a modification of the written contracts evidenced by the bills of lading or shipping orders, which, though illegal when made, have been validated by the curative effect of the provisions of Sec. 419, and appellee is now bound thereby. McNair v. Knott, 302 U.S. 369, 58 S.Ct. 245, 82 L.Ed. 307.

█ Since reversal of the judgment is predicated on an Act of Congress enacted subsequent to its rendition, all costs of this appeal will be taxed against appellant.

The judgment is reversed and the cause remanded, and the trial court is instructed to dismiss appellee's suit.

This opinion directed to be written and is adopted by the Court.

On Appellee's Motion for Rehearing.

In support of our holding that "where Congress has created such causes of action,'

they may be taken away at any time, even after they have accrued by subsequent statute," we cite as additional authorities: Galveston, H. & H. R. Co. v. Anderson, Tex.Civ.App., 229 S.W. 998, writ refused; Dickson v. Navarro County Levee Imp. Dist., No. 3, 135 Tex. 95, 139 S.W.2d 257, at page 259; Goodrich v. Wallis, Tex.Civ. App., 143 S.W. 285.

The motion for rehearing is overruled.

This opinion directed to be written and is adopted by the Court.

WALTHALL, J., not participating.